Ora LINDSEY, Appellant,

v.

UNIVERSITY OF MISSOURI,
Defendant,

Division of Employment Security,
Respondent.

No. WD 68522.

Missouri Court of Appeals,
Western District.

April 8, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 27, 2008.

Application for Transfer Denied
June 24, 2008.

Gwendolyn Froeschner, Columbia, MO, for appellant.

Larry Ruhmann, Jefferson City, MO, for respondent.

Before HOLLIGER, P.J., LOWENSTEIN and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

Ora Lindsey (Claimant) appeals the decision of the Labor and Industrial Relations Commission to affirm and adopt the Appeals Tribunal's determination that Claimant voluntarily left her employment without good cause attributable to her work or employer. On the basis of this decision, Claimant was denied the unem-

ployment benefits for which she had applied. This court finds that Claimant did not voluntarily quit her job, but was terminated by her employer. Accordingly, the decision of the Commission is reversed.

## FACTS

Claimant Lindsey began working for the University of Missouri (University) in April of 2003 as an administrative assistant in the Department of Learning, Teaching, and Curriculum. On April 6th, 2006, she had surgery on her hands to address a carpal tunnel condition. When she returned to work in the early part of May, she was able to work only a few hours before pain in her hands and fingers caused her to seek a leave of absence. It was discovered on a return visit to her doctor that she also suffered from a "degenerative disc" disease of the spine. Due to this condition and recovery from her surgery, Claimant remained on leave in various forms—first FMLA (Family and Medical Leave Act) leave and then unpaid leave provided by the University pursuant to its own policies—until February of 2007.

In December of 2006, the University began to correspond with Claimant about her employment situation. In the first letter, dated December 20, 2006, the University gave Claimant three options. By January 8, Claimant could: contact the University and set a return date to resume her work duties, request extended leave under University policies, or resign from her position. From a letter dated January 8, 2007, it is apparent that Claimant chose the second option. The University's January 8 letter informed Claimant that her request for extended leave would have to be supplemented by more recent physician's certificates detailing her medical conditions and gave a deadline of January 31 for the submission of such certificates. Finally, in a February 7, 2007 letter, the

University acknowledged receipt of the requested physician's certificates but noted that the conditions described therein would leave Claimant unable to carry out the duties of her employment. That letter included the statement, "[T]he purpose of this letter is to notify you that your request [for extended leave] is being denied, and that your employment will be terminated effective February 23, 2007."

On March 3, 2007, Claimant filed a claim for unemployment benefits with the Missouri Division of Employment Security (MDES). The MDES Deputy denied her claim, stating that she was disqualified from receiving benefits because she voluntarily left work without good cause attributable to her work or employer. Claimant then appealed the Deputy's decision to the MDES Appeals Tribunal (Tribunal). After a teleconference hearing of testimony from Claimant and a supervisor from the University, the Tribunal affirmed the Deputy's denial of benefits. The Tribunal found that Claimant quit her job because her employer "sent her a letter on January 8 ... denying her request and telling her to return to work on January 16, 2007," but Claimant did not return to work on that day. In its conclusions of law, the Tribunal explained, "When a claimant is on a medical leave of absence, their separation occurs once it expires and the claimant is unable to return to work. The separation is considered a quit without good cause unless the claimant presents competent medical evidence to the referee during the hearing in the form of a doctor's note...." The Tribunal found that Claimant had failed to present competent medical evidence and had, therefore, no good cause for her voluntary departure from her employment.

In response to the Tribunal's decision, Claimant appealed to the Labor and Industrial Relations Commission (Commission) in April of 2007. She attached to her appeal several doctors' notes explaining her medical condition, as well as the series of letters described above. The Commission, however, affirmed the decision of the Tribunal and adopted it as its own. Claimant brings this appeal, asserting that the Commission erred in doing so. She claims two points of error: first, that the Commission erred in finding that she voluntarily quit her position and, second, that it erred in finding that no good cause existed for a voluntary quit. This court will only consider the first point, as it reverses the Commission's decision on that basis.

## STANDARD OF REVIEW

This court's review of the Commission's decision is governed by Section 288.210, RSMo 2000, which provides that the "findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." That section also states,

The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

§ 288.210. While deference is paid to the Commission's findings of fact, this court does not defer to the Commission's conclusions of law or application of law to the facts. *Bunch v. Div. of Employment Sec.*, 965 S.W.2d 874, 877 (Mo.App.1998). The

Commission's determination of whether an employee voluntarily left her employment or was discharged is essentially a factual determination. *Madewell v. Div. of Employment Sec.*, 72 S.W.3d 159, 163 (Mo. App.2002). The question as to good cause for the leave is a legal issue. *Id.* The function of this court, in reviewing factual findings, is to determine whether the Commission, "'based upon the whole record, could have reasonably made its findings and reached its result.'" *Shields v. Proctor & Gamble Paper Products Co.*, 164 S.W.3d 540, 543 (Mo.App.2005)(*quoting Winco Mfg. Inc. v. Partee*, 141 S.W.3d 34, 37 (Mo.App. E.D.2004)). However, in cases where the basic facts are not disputed, but the significance of such facts is subject to interpretation, the determination involves primarily the application of the law to the facts and deference is inappropriate. *See Madewell*, 72 S.W.3d at 163.

### DISCUSSION

■■■ The purpose of Missouri's unemployment compensation act is to provide benefits to persons who are unemployed through no fault of their own. *Kelley v. Manor Grove, Inc.*, 936 S.W.2d 874, 876 (Mo.App.1997). For this reason, the disqualifying provisions of the act "are to be strictly construed against the disallowance of benefits to unemployed but available workers." *Mo. Div. of Employment Sec. v. Labor & Indus. Relations Comm'n of Mo.*, 651 S.W.2d 145, 148 (Mo. banc 1983). One such disqualifying provision denies benefits to claimants who leave work "voluntarily without good cause attributable to such work or to the claimant's employer." § 288.050.1(1), RSMo 2000 & Supp.2007. For purposes of this determination, "[a]n employee is deemed to have left work voluntarily when he leaves of his own accord, as opposed to being discharged, dismissed, or subjected to layoff by the employer."

*Miller v. Help at Home, Inc.*, 186 S.W.3d 801, 806 (Mo.App.2006).

The Respondents (the University of Missouri and the MDES) argue that the Commission correctly decided that Claimant voluntarily quit her job because "[w]hen a worker has been granted a leave of absence with a guarantee of reinstatement, as was the case in the case at bar, the termination is considered a quit if the employee fails to return at the termination of the leave." Respondents also assert that the documents (letters from the University to Claimant and physician's certificates) relied on by Claimant in her argument before this court should not be considered as evidence by this court as they were not properly before the Commission. Section 288.200.1 states that "the commission may affirm, modify, reverse, or set aside the decision of the appeals tribunal on the basis of the evidence previously submitted in such case or may take additional evidence or may remand the matter to the appeals tribunal with directions." "While the Commission has discretion as to the hearing of new evidence in cases before it, state regulation precludes additional evidence except 'upon the ground of newly discovered evidence which with reasonable diligence could not have been produced at the hearing before the administrative law judge.'" *Mena v. Cosentino Group, Inc.*, 233 S.W.3d 800, 805 (Mo.App.2007) (quoting 8 C.S.R. § 20–3.030(2)(A) (2007)). It is the Respondents' argument that the documents at issue were not "previously submitted" to the Tribunal or the Deputy and, as such, constituted new evidence when attached to Claimant's appeal to the Commission. Since the Commission adopted the Tribunal's decision, Respondents suggest that the Commission correctly decided not to consider the documents, which would effectively exclude them from review by this court as well (with analogy to the rule that an appellate court considers

only the record made in the trial court, *see Olson v. Christian County*, 952 S.W.2d 736, 738 (Mo.App.1997)).

The record is unclear regarding exactly which documents were before the Commission as previously submitted evidence. Unfortunately, neither the teleconference hearing transcript nor the Tribunal's decision discloses whether the letters of December 20, 2006, or January 8, 2007, or the various physician's certificates were before the Tribunal. However, this case can be resolved without reference to those documents. The evidence crucial to the issue at bar is the content of the February 7, 2007 letter from the University to Claimant. This letter was submitted to the Tribunal with Claimant's notice of appeal and, thus, was "previously submitted" evidence properly available for consideration as part of the record.

### FINDING OF FACT

The Commission, in adopting the opinion of the Tribunal, decided that Claimant voluntarily quit her job based on its findings that "Claimant applied for [her original] leave of absence to be extended but the employer sent her a letter on January 8, 2007 denying her request and telling her to return to work on January 16, 2007" and that "Claimant did not return to work on that day." On this basis, the Commission concluded that Claimant had failed to return after the expiration of her leave and had thereby voluntarily left her job. An analysis of the whole record reveals that these findings were against the evidence and unreasonable.

From the testimony of the supervisor who spoke for the University in the teleconference Tribunal hearing, the assessment of the Commission as to the actual date on which Claimant's leave was to expire is not immediately exposed as erroneous. The supervisor testified as follows:

Q: And when was she to return to work for that—under that medical leave without pay?

A: We sent her a letter in January, 2007, that said she needed to return to work by January 16.

Q: Saying that date of that letter was what?

A: January 8, 2007. We basically denied the medical leave extension and asked her to return to work by the 16th of January.

Q: And that was January 16, 2007?

A: Uh-huh

Q: And she returned to work on that day?

A: No, she did not.

. . .

A: [W]e asked her to submit a new doctor's—physician's certifications, which she did, and, you know, they did not release her to return to work. They said no repetitive motion.

Q: And repetitive motion was part of her job duties?

A: Yes, there was quite a bit of keyboarding.

. . .

Q: So after January 26, 2007, her doctors had stated that claimant couldn't return to work?

A: Yes.

It is not clear from this testimony exactly what message the January 8 letter conveyed regarding the employment relationship between the parties. Clearly, the speaker is asserting that the letter requested Claimant to return to work, but there is no indication of chronology with respect to the request for new physician's certifications. If that request was included in the January 8 letter, it would show that the University was still in the process of discussing the duration of leave with

Claimant. The last question adds to the ambiguity by suggesting that it was not until after January 26 that the University had the information it requested to serve as a basis for its decision on Claimant's leave.[1]

Claimant provided, with her application for review before the Tribunal, the February 7, 2007 letter. That letter is addressed to Claimant, printed on a University of Missouri College of Education letterhead, and purports to originate from the Department of Learning, Teaching, and Curriculum. It states, in pertinent part:

> Dear [Claimant]:
>
> We received the two requested physician certifications from you on February 1, 2007, one for your neck and back condition and the second for your carpal tunnel condition. Your physician stated a limitation of no repetitive activity on his certification dated 12/27/06. Your administrative assistant position requires significant typing and repetitive motion, and we feel that you are not able to perform the duties outlined in your position.
>
> We have carefully reviewed your situation, followed all University policies, and considered your request to extend your medical leave of absence. However, due to our large department's busy and complex operations, we cannot extend your leave of absence.
>
> . . .
>
> Therefore, the purpose of this letter is to notify you that your request is being denied, and that your employment will be terminated effective February 23, 2007.

It is clear from this letter that Claimant's leave extension was still being considered on January 16, 2007, and thereafter. Since the University made its decision to deny an extension of leave based on documents received on February 1 and sent its "notice" of that decision on February 7, the Commission's finding that Claimant had already voluntarily ended her employment on January 16 is unreasonable. The letter is not entirely inconsistent with the supervisor's testimony but, rather, explains that the physician's certifications were requested as part of an ongoing consideration of Claimant's request for additional leave, preserving the status quo wherein her job was being held for her return. After a review of the whole record with due attention paid to the February 7 letter, this court holds that the Commission could not reasonably have found that Claimant voluntarily left her employment.

## APPLICATION OF LAW

Respondents cite *Division of Employment Security v. Labor & Industrial Relations Commission* as support for the Commission's decision. *See* 617 S.W.2d 620 (Mo.App.1981). In that case, however, the court found that the claimant had left work voluntarily because she took personal leave with no guarantee of continued employment at the end of the leave period. *Id.* at 627 (employee's return to work was contingent upon an opening in the accounting department being available at that time). A recent case from this court explains that

1. Notably, from the context of the transcript text surrounding that quoted above, it is arguable that the Tribunal Referee's mention of "January 26, 2007" was either accidental or incorrectly reflected by the transcript and that January 16, 2007 was the intended date. Generally, in situations where evidence before an administrative body could support either of two opposed findings, the court will defer to whichever finding is made. *Pulitzer Publ'g Co. v. Labor & Indus. Relations Comm'n*, 596 S.W.2d 413, 417 (Mo. banc 1980). Under the circumstances here, the Commission had available to it evidence that clarified the ambiguity and made it unnecessary to simply choose between plausible interpretations.

"personal illness that causes a leave of absence has only been held to cause a voluntary termination of employment in three distinct situations." *Difatta–Wheaton v. Dolphin Capital Corp.,* No. WD67789, 2008 WL 220197, at *5 (Mo. App. Jan.29, 2008). The first is where, as in the case noted above, an employee takes a leave of absence from which return is conditioned on job availability. *Id.* The second involves a known, written policy of the employer stating that an employee will be deemed to have abandoned his or her employment after a specific number of days absent. *Id.* Finally, the third situation exists where an employee fails to take reasonable measures to maintain the position while on a voluntary leave of absence. *Id.* The events that preceded Claimant's severance from employment at the University do not fit any of these categories. As discussed *supra,* the February 7 letter makes it clear that Claimant's position was being held for her by the University while it made its decision as to whether extended leave would be granted. Upon making its decision to deny extended leave, the University also decided that, due to her physical condition, Claimant would not be allowed to return to her employment. This is in contrast to the situation where an employer demands that the employee return or forfeit her position (grounds for finding a voluntary "quit" under *Madewell v. Division of Employment Security,* 72 S.W.3d at 165, if the employee does not comply). Here, the University's February 7 letter informed Claimant both that her request for leave was denied and that she would not be allowed to return to work. On this evidence, no other conclusion can be reached except that the University, by the February 7 letter, terminated Claimant's employment as of the date stated, February 23, 2007.

### CONCLUSION

Having determined that the finding of a voluntary leave was not supported by sufficient evidence, the decision of the Commission is *reversed* and the matter is remanded.

All Concur.