Bridget EWING, Appellant,

v.

SSM HEALTH CARE and Division
of Employment Security,
Respondents.

No. ED 90805.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 7, 2008.

Amany Ragab Hacking, Saint Louis University Law Clinic, St. Louis, MO, for appellant.

SSM Health Care, Pro Se, Phoenix, AZ, for respondent, SSM Health Care.

Marilyn G. Green, Department of Labor and Industrial Relations, Division of Employment Security, Jefferson City, MO, for respondent, Division of Employment Security.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Bridget Ewing (Claimant) appeals from the Order of the Labor and Industrial Relations Commission (the Commission) finding that she is not eligible for unemployment benefits because she voluntarily quit her employment with SSM Health Care—St. Joseph Health Center (Employer) without good cause attributable to her work or Employer. We affirm.

## Background

Claimant was hired by Employer on June 4, 2007, for a full-time clinical partner position. She worked in that position until June 19, 2007. Claimant was scheduled to work on June 21, 2007, however, her brother died that day, so she called into work to report her absence to Employer. As the Appeals Tribunal found and Claimant testified, Claimant also called into work to report her absences, due to her brother's death, on June 23, 2007, June 25, 2007 and June 26, 2007. Claimant left messages for her supervisor, Maureen Bell (Bell), but no one from Employer returned her calls.

Claimant was next scheduled to work on June 30, 2007. On that date, however, she was attending her brother's funeral in Pine Bluff, Arkansas. Claimant was next scheduled to work on July 1, 2007, but did not return to work on that date because she was still grieving the death of her brother. Claimant was also scheduled to work on July 5, 2007. She did not go to work or call in that day because she assumed she was fired after not having any of her phone calls returned by Employer. Claimant reported that after calling and leaving messages, she never received any return phone calls from Employer or Employer's Human Resources Department.

Thereafter, Claimant filed a claim for unemployment compensation. In response, Employer filed a "Letter of Protest," which reported Claimant "was a no call, no show on 6/25/07 and 6/26/07." Employer listed that Claimant was "discharged" for "Absenteeism, Unreported."

The Deputy's Determination Concerning Claim for Benefits (Deputy's Determination), mailed on July 19, 2007, disqualified Claimant from unemployment benefits because the Deputy found that she was discharged for misconduct associated with work. The Deputy's Determination found that Claimant was discharged because of her unreported absences on June 25, 2007 and June 26, 2007.

Claimant appealed the Deputy's Determination to the Appeals Tribunal on August 8, 2007, noting "I called into the job and told them that my brother had passed away." A telephone hearing was held August 27, 2007, between Claimant, Bell, and the Appeals Referee. Bell testified that she filled out the appropriate paperwork and made the decision to discharge Claimant on June 27, 2007, after Claimant was a no-call, no-show on June 25 and 26. Bell stated that she "put a note in for H.R." to contact Claimant and let her know her employment was terminated. Bell further stated that someone from human resources did, in fact, notify Claimant that she no

longer had a job, though Bell did not have the date of that call offhand. Bell noted for the record that Employer considered Claimant's case "job abandonment and voluntary resignation." Bell testified that Employer's policy stated that two no-call, no-shows constituted voluntary resignation.

The Appeals Tribunal issued its decision modifying the Deputy's Determination, though still denying Claimant unemployment benefits. The Appeals Tribunal first found that Claimant "voluntarily left her employment after June 26, 2007." The Appeals Tribunal further found that "regardless of any decision made by [Employer,] [Claimant] stopped reporting to work after June 26, 2007," and "[a]t no time did anyone with the employer notify [Claimant] that she no longer had a job." The Appeals Tribunal found that Claimant "did not have good cause to quit employment within twenty-eight days of starting," noting that she either quit due to her brother's recent death or her belief that she had already been discharged. The Appeals Tribunal concluded that Claimant "voluntarily left her employment without good cause attributable to the work or [Employer] on June 26, 2007."

Claimant filed an Application for Review with the Commission on September 5, 2007. The Commission affirmed and adopted the decision of the Appeals Tribunal, with one commissioner filing a dissenting opinion.

Claimant filed her Notice of Appeal with this Court on January 4, 2008.

## Points on Appeal

Claimant raises three points on appeal. First, Claimant argues the Commission erred in denying her unemployment benefits because its finding that she voluntarily left her employment was not supported by competent and substantial evidence. Claimant contends that the evidence in the record shows she was fired from her employment on June 27, 2007.

Second, Claimant asserts the Commission erred in denying her benefits because she did not engage in misconduct connected with work, but was grieving the death of her brother and properly reported all absences from her employer before being terminated on June 27, 2007.

Finally, Claimant alleges the Commission erred because, even if she did voluntarily quit her employment, Claimant had good cause attributable to her employer so as to not disqualify her from unemployment benefits when she, in good faith, left her employer several phone messages inquiring about her work status and reasonably assumed she was discharged when she received no response by July 1, 2007.

## Standard of Review

Article 5, Section 18 of the Missouri Constitution and Section 288.210, RSMo 2000 [1] set forth the standard for reviewing decisions of the Commission in unemployment compensation cases. On appeal, this Court,

> may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or

1. All further statutory references are to RSMo 2000, unless otherwise indicated.

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210.

■ In cases involving unemployment compensation, our review "is limited to deciding whether the Commission's decision is supported by competent substantial evidence and authorized by law." *Cotton v. Flik Int'l Corp.*, 213 S.W.3d 189, 192 (Mo.App. E.D.2007). We will "review the evidence and all reasonable inferences, drawn therefrom in the light most favorable to the Commission's findings." *Id.* Our function "is to determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." *Mena v. Cosentino Group*, 233 S.W.3d 800, 803 (Mo.App. W.D.2007).

## Discussion

### Point I—Discharge or Voluntary Quit

■ Claimant first argues that the Commission's finding that she voluntarily quit her employment was not supported by competent and substantial evidence, and that the record supports her claim that she was discharged by Employer. We disagree.

■ Section 288.050 of Missouri's unemployment benefits law provides that benefits will be denied to unemployed workers if "the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." Where an employee "leaves of his own accord, as opposed to being discharged, dismissed, or subjected to layoff by the employer," he is deemed to have left work voluntarily. *Lindsey v. Univ. of Mo.*, 254 S.W.3d 168, 171 (Mo.App. W.D. 2008). An employee, not the employer, "bears the burden of proving [an employ-

ee] was discharged and did not voluntarily quit." *Cotton*, 213 S.W.3d at 193.

■ The determination of the Commission as to "whether an employee voluntarily left work or was discharged is a factual determination." *Id.* Findings of facts by the Commission, "if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." Section 288.210. Thus, the Commission's factual findings are treated deferentially. *K & D Auto Body, Inc. v. Div. of Employment Sec.*, 171 S.W.3d 100, 103 (Mo.App. W.D. 2005).

The Commission adopted the Appeals Tribunal's holding that Claimant "voluntarily left her employment after June 26, 2007." While the Appeals Tribunal lists this finding under "Conclusions of Law," case law is clear that the determination of whether an employer was fired or quit is a question of fact and should therefore be reviewed with deference to the Commission's decision. *Lindsey*, 254 S.W.3d at 171; *Cotton*, 213 S.W.3d at 193.

We find the Commission's factual determination that Claimant quit, and was not fired by Employer, was based on competent and substantial evidence. Bell testified at the hearing that Employer's policy is that two "no-call, no-shows" is treated as a "voluntary resignation" and that Employer considered Claimant abandoned her job and voluntarily resigned. Furthermore, because Claimant was never notified that she no longer had her job, her decision not to report to work or call on June 30, July 1, or July 5, can reasonably be viewed by the Commission as demonstrating Claimant's intent to voluntarily resign her employment. Claimant was in Arkansas for her brother's funeral on June 30, 2007. Claimant testified that she did not report to work on July 1 because she was

still mourning the loss of her brother, and did not report or call in on July 5 because she assumed she no longer had a job. Regardless of the reasons, Claimant chose not to return to work as scheduled and chose not to report her absences for those three days. Had Claimant chosen to continue her employment, she could have returned to work to seek clarification of her work status or, at the very least, continued to call in her absences. Without question, Employer's failure to respond to Claimant's phone calls or communicate to Claimant regarding her employment status evidences a disturbing lack of regard by Employer for its employees. However, despite Employer's failure to communicate with Claimant, we find that sufficient evidence exists on the record to support the Commission's factual findings that Claimant voluntarily abandoned her job.[2]

■ While evidence exists that Claimant may have been fired from her job, where "evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination and it is irrelevant that there is supportive evidence for the contrary finding." *Barlynn Enters., Inc. v. Foell,* 223 S.W.3d 168, 171 (Mo.App. S.D.2007). The record before the Commission, considered in its entirety and viewed in the light most favorable to the Commission's decision, contains sufficient competent and substantial evidence to support its factual findings that Claimant voluntarily quit her employment. The Commission's determination is not against the overwhelming weight of the evidence. Claimant's first point on appeal is denied.

*Point II—Misconduct Associated With Work*

In her second point on appeal, Claimant alleges that her discharge was not caused by "misconduct connected with work." As we have determined Claimant voluntarily quit her employment and was not discharged, this point is moot.

*Point III—Good Cause Attributable to Employer*

■ In her last point on appeal, Claimant alleges that even if this Court determines she voluntarily quit her employment, she asserts she did so with "good cause attributable to such work or to the claimant's employer." Section 288.050. We disagree.

■ In unemployment benefits cases, "the claimant bears the burden of proving the existence of good cause for a voluntary departure." *Mena,* 233 S.W.3d at 804. Where an employee voluntarily quits her employment, the "good cause necessary to support an award of unemployment benefits ... must be cause attributable to her work or her employer." *Id.* "Attributable to [her] work or to [her] employer means that it must be the work or the employer himself that creates the condition making it unreasonable to expect this employee to continue to work." *Id.* The determination of whether the "cause is attributable involves the application of the law to the facts and, therefore, is a question of law, which the court reviews independently of the Commission's determination." *Id.*

■ The determination as to whether an employee's "reason for leaving his employment constituted 'good cause' is

---

**2.** Evidence that Claimant was absent from work on June 30 and July 1 for personal reasons relating to her brother's death without reporting her absence support the Commission's findings that Claimant voluntarily quit her job. Without these facts as found by the Commission, we would be left to consider the circuitous question of whether an employee involuntary discharged by an employer could avail himself or herself to the protections of Missouri's law providing unemployment benefits where the employer had not informed the employee of his or her discharge.

a legal issue on which we do not defer to the Commission's determination." *Lashea v. Fin–Clair Corp.*, 30 S.W.3d 237, 240–41 (Mo.App. E.D.2000). "Good cause" has no precise meaning but depends on the facts of each independent case. *Wheeler v. Poor Boy Tree Serv.*, 252 S.W.3d 253, 257 (Mo.App. S.D.2008). "Good cause" is examined "by the objective standard of what a reasonable person would do in the same or similar circumstances." *Lashea*, 30 S.W.3d at 241. "Good cause" is "limited to instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person would be justified in terminating employment." *Id.* An employee's voluntary termination "must be in good faith, and thus, good faith is an essential element of good cause." *Id.* In order to "establish good faith, the employee must prove an effort was made to resolve the dispute before resorting to the drastic remedy of quitting his job." *Id.*

We find that Claimant has failed to show good cause attributable to her work or Employer. While Claimant argues that she left her employment because Employer did not return her calls, the evidence suggests that Claimant did not return to work as a result of her tragic family situation. The Commission, by adopting the Appeals Tribunal's decision, found Claimant was absent on June 30 because she was attending her brother's funeral out of state, absent on July 1 because "she was still grieving her brother's death," and absent on July 5 because "she assumed that she no longer had a job." The Commission found that Claimant attributed her failure to report or call in to work on Employer's failure to return her phone calls only for July 5. On the previous two days, Claimant attributed her absences from work to her family situation. While it is understandable that Claimant might choose to leave her job of three weeks under these sad and personally challenging circumstances, the circumstances do not constitute "good cause attributable to [her] work or to [her] employer." Further, we find that Claimant failed to demonstrate a good faith effort to resolve the issue before resorting to the drastic remedy of not returning to her job. Although Claimant initially called Employer to report her absences from work, she failed to call Employer on June 30, July 1, and July 5. Claimant also failed to report to work as scheduled, or speak with Bell or anyone else at her employer upon returning from Arkansas. Claimant's personal grief, while it may subjectively be a good cause, "does not avoid the statute's harsh result" that the "good cause" must be "attributable to [her] work or to [her] employer." *Hessler v. Labor and Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. banc 1993). *See also Lashea*, 30 S.W.3d at 241; *Lyell v. Labor and Indus. Relations Comm'n Div. of Employment Sec.*, 553 S.W.2d 899, 901 (Mo.App.1977). While we understand and sympathize that Claimant's personal situation may have left her with no option but to discontinue her employment with Employer, we cannot find that Claimant's decision not to return to work was necessarily caused by Employer, so as to entitle Claimant unemployment benefits.

We find the Commission's determination that Claimant voluntarily quit her employment without good cause attributable to her work or Employer was supported by competent and substantial evidence.

### Conclusion

The judgment of the Commission is affirmed.

GLENN A. NORTON and PATRICIA L. COHEN, JJ., Concur.