**Kimberly WILLIAMS, Appellant,**

v.

**DUTCHTOWN CARE CENTER, INC., and Division of Employment Security, Respondents.**

**No. ED 93850.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 25, 2010.

Rehearing Denied June 29, 2010.

---

John J. Ammann, St. Louis, MO, for appellant.

Joshua M. Schindler, Clayton, MO, Jeannie D. Mitchell, Jefferson City, MO, for respondents.

PATRICIA L. COHEN, Judge.

### Introduction

Kimberly Williams (Claimant) appeals from the decision of the Labor and Industrial Relations Commission (Commission) finding her ineligible for unemployment benefits because she voluntarily left her employment without good cause attributable to her work or her employer. We reverse and remand.

### Factual and Procedural Background

On June 19, 2009, a deputy for the Missouri Division of Employment Security (Division) disqualified Claimant from receiving unemployment benefits based on its finding that Claimant voluntarily left her work on August 20, 2008 without good cause attributable to her work or her employer, Dutchtown Care Center, Inc. (Employer). Claimant appealed the deputy's decision to the Division's Appeals Tribunal. On August 11, 2009, the Appeals Tribunal conducted a telephone hearing, at which the following evidence was adduced:

Employer hired Claimant to work as a housekeeper in March 2008. Employer's employee handbook contained a "no call, no show" policy, which provided: "An absence of two (2) or more consecutively scheduled work days, without calling your Supervisor, will be treated as a voluntary quit." On March 28, 2008, Claimant signed an acknowledgment stating that she received the employee handbook and agreed to read and abide by its policies.

Claimant's last day of work was August 28, 2008. About one hour prior to her next scheduled work shift on August 30, 2008, Claimant called her supervisor, Tony Skinner, to inform him that she would not be coming to work that day because her minor son was suffering medical complications from a gunshot wound. Claimant and Mr. Skinner offered contradictory evidence regarding whether Claimant spoke directly to Mr. Skinner at this time. Claimant testified that, when she called in on August 30, 2008, she talked to Mr. Skinner, and "he just said call—call them and let them know about [her] son. . . ." However, Mr. Skinner testified that he received a voice message from Claimant but did not speak to her personally.

Lilly Landy, Employer's administrator, testified that Employer expects its employees to pick up their monthly work schedules prior to the first day of each month, and Claimant did not pick up a copy of her September schedule prior to September 1, 2008. Claimant was scheduled to work on September 1, September 6, September 7, and September 9, but she neither called in nor reported to work on these days. Claimant testified that she "just assumed when [she] called in on the 30th they were going to hold [her] job."

Approximately two weeks after Claimant's August 30, 2008 call to Mr. Skinner, Claimant called Mr. Skinner to inquire about returning to work, and Mr. Skinner told her she "was fired." Claimant subsequently filed a claim for unemployment compensation. Employer protested the claim, alleging that Claimant voluntarily quit because she did not report to work for four consecutive shifts on September 1, September 6, September 7, and September 9, 2008.

On August 14, 2009, the Appeals Tribunal issued its decision denying Claimant benefits on the grounds that Claimant voluntarily left her employment without good cause attributable to the work or Employer. Claimant filed an application for review with the Commission, and the Commission affirmed and adopted the Appeals Tribunal's decision. Claimant appeals.

### *Standard of Review*

On appeal from a decision in an unemployment benefits proceeding, this court may modify, reverse, remand for rehearing, or set aside the award upon finding that: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Mo.Rev. Stat. § 288.210 (2000); *Korkutovic v. Gamel Co.*, 284 S.W.3d 653, 655–56 (Mo.App. E.D.2009). We will affirm the Commission's decision if we find, upon a review of the whole record, that there is sufficient competent and substantial evidence to support the Commission's decision. *E.P.M., Inc. v. Buckman*, 300 S.W.3d 510, 513 (Mo. App. W.D.2009).

While we defer to the Commission's findings of fact, we are not bound by the Commission's conclusions of law or its application of the law to the facts. *Korkutovic*, 284 S.W.3d at 656. "[T]he standard of review is *de novo* when the issue, as it is here, is whether the facts found by the Commission can, as a matter of law, be considered to constitute a voluntary departure from employment." *Moore v. Swisher Mower & Mach. Co., Inc.*, 49 S.W.3d 731, 739 (Mo.App. E.D.2001) (quotation omitted); *see also Shields v. Proctor & Gamble Paper Prods. Co.*, 164 S.W.3d 540, 543 (Mo.App. E.D.2005).

### *Discussion*

In her first point on appeal, Claimant argues that the Commission erred in

denying her unemployment benefits because its finding that she voluntarily left her employment was not supported by competent and substantial evidence. We agree.[1]

Under Section 288.050, a claimant is not eligible for unemployment benefits if a deputy finds that the claimant: (1) "has left work voluntarily without good cause attributable to such work or to the claimant's employer"; or (2) "has been discharged for misconduct connected with the claimant's work." Mo.Rev.Stat. §§ 288.050.1(1), 288.050.2. The disqualifying provisions of Section 288.050 are strictly and narrowly construed in favor of finding that an employee is entitled to compensation. *Sokol v. Labor & Indus. Relations Comm'n of Mo.*, 946 S.W.2d 20, 23 (Mo.App. W.D.1997). Nonetheless, where, as here, the employer claims that the employee voluntarily left her employment without good cause attributable to the employer, the employee has the burden of proving either that she left for good cause attributable to her employer, or that she did not voluntarily leave work but rather was discharged. *Id.*

Our review of the record reveals insufficient competent and substantial evidence to support the Commission's conclusion that Claimant voluntarily quit. The uncontroverted evidence shows that on August 30, 2008, Claimant called Mr. Skinner to inform him that, due to a family medical emergency, she would not be reporting to work. Employer's written policy provided that employees who failed to call in two consecutive absences would be deemed to have quit.[2] Claimant was scheduled to work four shifts in September 2008, for which she did not report or call in to work. Claimant assumed that Employer knew she was absent from work because she was caring for her son. After approximately two weeks passed during which Claimant did not communicate with Employer, she called to inquire about her job and ask to return to work. At this time, Mr. Skinner informed Claimant that she was fired. The Commission determined that Claimant "did not call in properly to report her absence."

Based on the entire record, we find that Claimant did not voluntarily quit, but rather was discharged for violating Employer's "no call, no show" policy by failing to report for work or call in her absences for four consecutive work shifts. *See Moore*, 49 S.W.3d at 738. "[T]he plain meaning of the statutory words 'left work voluntarily' simply cannot be construed to include what is obviously a *discharge* for failing to comply with a work rule." *Id.* (emphasis in original).

The Division relies on *Ewing v. SSM Health Care* for the proposition that an employee voluntarily abandons her employment when she violates her employer's

---

1. Because we reverse and remand on the basis that the Commission erred in holding that Claimant voluntarily left her employment, we need not address Claimant's second point in which she claims that the Appeals Tribunal failed to develop a full and complete record or substantial competent evidence.

2. We note that an employer's characterization of a separation from employment as a voluntary quit or a discharge is not binding on the Division or on the courts. *See Madewell v. Div. of Employment Sec.*, 72 S.W.3d 159, 166 (Mo.App. W.D.2002); *Reno v. Tyson Poultry,*

*Inc.*, 204 S.W.3d 347, 350 (Mo.App. W.D. 2006). "While the terms that the parties use to describe cessation of an employee's employment may be instructive, the relevant facts and circumstances are controlling." *Moore*, 49 S.W.3d at 737–38. Citing *Ayers v. Sylvia Thompson Residence Ctr.*, the Division conceded at oral argument that an employer's characterization of a separation from employment as a discharge or voluntary quit may be instructive, but it is not dispositive. 211 S.W.3d 195, 199 (Mo.App. W.D.2007).

"no call, no show" policy. 265 S.W.3d 882, 887 (Mo.App. E.D.2008). However, the facts in *Ewing* are distinguishable. In *Ewing,* the employee missed five days of work due to the death of her brother. *Id.* at 884. Although she reported her first three absences in accordance with employer's policy, she failed to report the subsequent two absences. *Id.* Without contacting her employer to inquire about her employment status, the employee assumed she was fired and filed for unemployment benefits. *Id.* This court affirmed the Commission's determination that the employee voluntarily quit, reasoning that "because [the employee] was never notified that she no longer had her job, her decision not to report to work or call ... can reasonably be viewed by the Commission as demonstrating Claimant's intent to voluntarily resign her employment." *Id.* at 886. Here, by contrast, Claimant *did* attempt to return to work, and was informed that she no longer had a job.

 Having determined that the Commission's conclusion that Claimant voluntarily quit her job was not supported by sufficient evidence, the question becomes whether Employer discharged Claimant for misconduct connected with work. Mo. Rev.Stat. § 288.050.2. The Missouri Employment Security Law defines "misconduct" as:

> An act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Mo.Rev.Stat. § 288.030.1(23). In cases involving a discharge from work, the employer "bears the burden of proving by a preponderance of the evidence that [the claimant] willfully violated the rules or standards of the employer." *Dobberstein v. Charter Communications, Inc.,* 241 S.W.3d 849, 852 (Mo.App. E.D.2007) (quotation omitted). The record before us is insufficient to complete a meaningful review of whether Employer met its burden of proving Claimant willfully violated Employer's rules or standards. *See e.g., Lindsey v. Univ. of Mo.,* 254 S.W.3d 168, 174 (Mo.App. W.D.2008); *Berwin v. Lindenwood Female College,* 205 S.W.3d 291, 296 (Mo.App. E.D.2006). We therefore remand this case to the Commission for further findings of fact and conclusions of law on the issue of misconduct connected with work.

### Conclusion

The Commission's decision is reversed and the matter is remanded.

SHERRI B. SULLIVAN, P.J., and ROBERT G. DOWD, JR., J., concur.