Tiffanie WHEELER, Claimant,

v.

**PINNACLE AUTOMOTIVE PROTECTION, INC.,**
**Employer/Appellant,**

and

**Division of Employment Security,**
**Respondent.**

**No. ED 99928.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 19, 2013.

Tiffanie Wheeler, Imperial, MO, pro se.

Matthew S. McBride, St. Louis, MO, for Employer/Appellant.

Sara H. Harrison, Jefferson City, MO, for Division of Employment Security.

SHERRI B. SULLIVAN, J.

*Introduction*

Pinnacle Automotive Protection, Inc. (Employer) appeals from the Labor and

Industrial Relations Commission's (Commission) decision finding Tiffanie Wheeler (Employee) was not disqualified from unemployment benefits. We affirm.

*Factual and Procedural Background*

Employer sells extended vehicle service contracts. Employee worked for Employer between May 2010 and November 2012, with her last position being that of a "collector" or customer service representative. The week before Employee's separation from Employer, Employee and some of her co-workers went to a bar and grill after work hours. One of her co-workers subsequently told Chris Shoemaker (Shoemaker), Employer's president and Employee's father, that Employee had done "inappropriate things" while at the bar. Shoemaker questioned several other employees about the incident, all of whom stated they did not see anything.

On November 12, 2012, Shoemaker called Employee into his office and "asked her point blank if the rumors were true" and Employee replied, "No." Employee testified Shoemaker then told her she needed to "grow up," to start talking to people more her age and that he "didn't need someone like me working for him and that I should just go find a new job." Employee stated that after Shoemaker told her she was fired, she asked, "Are you kidding me?" and he replied, "No, I think it's best if you would just go find a new job." Employee testified, "And, for once, I didn't argue with him and I said, okay, if that's what you want … And, he said it is."

Shoemaker testified he told Employee that she was an extension of him and needed to conduct herself respectfully and that "if you cannot conduct yourself in this manner, then, maybe, you need to start looking for another job." Shoemaker denied discharging Employee and stated he told Employee that "… maybe you need to start looking for another job if you cannot present yourself in a manner that's appropriate around employees."

Employee testified that after the encounter, she left Shoemaker's office crying and returned to her desk. Laura Armbsy (Armbsy), Employee's manager, asked her how the meeting went and Employee responded, "I told you he was gonna fire me." Employee stated Armbsy watched her gather her things and leave. Employee left work approximately 30 minutes before her scheduled leave time.

On November 13, the following day, at 6:45 a.m., Shoemaker sent Employee a text saying, "You already quit one job, don't be a fool and quit another one." Shoemaker stated Employee responded, "I didn't quit. You told me to find a new one." Employee testified she told Shoemaker, "I would never quit my job, that I loved my job, I loved doing what I did, loved going to work every day for him. I loved it. And, he told me it was too late."

Employee was scheduled to work on November 13, 2012, but did not report to work that day or any following day and did not notify anyone that she was not going to come to work. Employee testified Shoemaker discharged her on November 12 and she did not report to work on November 13 because Shoemaker had told her not to come back. Employee testified she tried to save her job by communicating with Shoemaker on November 13 via text message and by calling Shoemaker "a couple of times." Employee stated "when I spoke with him, he told me it was his way, that I needed to do things his way," and "[w]hen I tried to call him to talk to him, all he wanted to do was threaten me." Shoemaker denied ever receiving another phone call or having another conversation with Employee after the November 13 text messages. Shoemaker testified he be-

lieved Employee quit her job by not returning to work.

On November 19, 2012, Ken Brotherton (Brotherton), Employer's general manager, sent Employee a letter titled "RE: Termination of employment." In the letter, Employer advised Employee that her employment had been terminated effective November 16, 2012 for violating the company's attendance policy as set forth in the employee manual.

On November 23, 2012, Employee filed a claim for unemployment benefits. Employer protested the claim, stating Employee violated company policy. Under the section reserved for details related to "a discharge separation," Employer asserted that Employee's "[e]mployment was terminated as 'absence without notice.'" On December 14, 2012, a deputy for the Missouri Division of Employment Security (Division) determined Employee was disqualified from receiving unemployment benefits based on a finding that Employee voluntarily left her employment without good cause attributable to the work or Employer. Employee appealed the deputy's decision to the Division Appeals Tribunal (the Tribunal).

The Tribunal reversed the deputy's decision, finding Employee was not disqualified from benefits. The Tribunal found Employee was discharged on November 16, 2012. The Tribunal found Employer was not credible and Division records showed Employer sent Employee a termination notice on November 19, 2012, stating she was terminated as of November 16, 2012, for a "no call no show" on November 12, 2012.[1] The Tribunal further found that after the November 13, 2013 text messages, Employee and Employer "both attempted unsuccessfully to resolve the matter." The Tribunal found Employee provided competent and substantial evidence that she was not a "no call no show" on November 13, 2012, because she reasonably believed she had been discharged by Shoemaker on November 12. The Tribunal found there was no evidence Employee willfully or intentionally violated Employer's policy, and Employer failed to meet its burden of proving misconduct. Based upon these findings, the Tribunal found Employee was discharged on November 16, 2012, but not for misconduct connected with work and was not disqualified from receiving unemployment benefits. Employer appealed the Tribunal's decision to the Commission.

On April 1, 2013, the Commission issued its order affirming and adopting the Tribunal's decision. This appeal follows.

### Standard of Review

On appeal from a decision in an unemployment benefits proceeding, this Court may modify, reverse, remand for rehearing, or set aside the Commission's decision upon a finding that (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence to warrant making the award. Section 288.210.[2] This Court defers to the Commission's determinations as to the weight of the evidence and the credibility of the witnesses. *Dixon v. Division of Employment Sec.*, 106 S.W.3d 536, 539–40 (Mo. App. W.D.2003). Absent fraud, the Commission's findings of fact are conclusive if

---

1. Presumably, this final date is a typographical error, as the uncontested evidence was that November 13, 2012, was the first day Employee did not report to work.

2. All statutory references are to RSMo 2012.

supported by competent and substantial evidence. Section 288.210. This Court is not bound by the Commission's conclusions of law or its application of the law to the facts. *Ayers v. Sylvia Thompson Residence Center*, 211 S.W.3d 195, 198 (Mo. App. W.D.2007).

When reviewing the Commission's decision, we look to the whole record, not merely at the evidence supporting the Commission's decision, to determine whether the award is supported by sufficient competent and substantial evidence. *Turner v. Proffer Transp., Inc.*, 310 S.W.3d 769, 774 (Mo.App. E.D.2010). The evidence is viewed objectively, not in the light most favorable to the Commission's decision. *Id.* A determination contrary to the overwhelming weight of the evidence in the record is not supported by competent and substantial evidence. *Id.*

### Discussion

It is Missouri's declared public policy to set aside unemployment reserves for the benefit of individuals unemployed through no fault of their own. Section 288.020.1. The provisions of Section 288.020 *et seq.* are intended to be construed liberally to accomplish the State's public policy. Section 288.020.2. To execute this policy, "[d]isqualifying provisions are construed strictly against the disallowance of benefits." *St. John's Mercy Health System v. Div. of Employment Sec.*, 273 S.W.3d 510, 514 (Mo. banc 2009).

### Voluntary Quit—Points I and II

In its first two points, Employer argues the Commission erred in finding Employee was not disqualified from receiving unemployment benefits because the Commission incorrectly found that Employee was discharged, in that Employee voluntarily quit her position without good cause attributable to the work or Employer.

Section 288.050.1(1) is a disqualifying provision, providing that a claimant is disqualified from receiving unemployment benefits if she voluntarily leaves her employment without good cause attributable to the work or employer. The claimant has the burden of proving that she did not leave her employment voluntarily, or, that if she did, she did so with good cause. *Miller v. Help At Home, Inc.*, 186 S.W.3d 801, 806 (Mo.App. W.D.2006). An employee voluntarily leaves her work, as opposed to being discharged, dismissed or laid off, when she leaves of her own accord and volition. *Id.*

This Court will affirm the Commission's factual determination as to whether an employee voluntarily left her employment or was discharged if it is supported by competent and substantial evidence on the record as a whole. *Lentz v. Home Sec. of Am.*, 380 S.W.3d 1, 4 (Mo. App. E.D.2012). However, whether the facts found by the Commission can, as a matter of law, be considered to constitute a voluntary departure from employment is reviewed *de novo. Id.*

Employer argues the Commission erred in analyzing the claim as a discharge for misconduct as opposed to a voluntary quit. We disagree.

The Commission found Employee did not voluntarily quit and was discharged by Employer on November 16 for violating the company's absence policy, a finding supported by competent and substantial evidence in the record. Although Shoemaker testified at the hearing he believed Employee quit her job by not returning to work, the Commission specifically found this evidence was not credible in light of Employer's prior assertion to the contrary. Employer sent Employee a letter

on November 19, advising her that her employment had been terminated effective November 16 for violating the company's attendance policy. In protesting Employee's benefits claim, Employer referenced the termination letter and asserted, under the "discharge" section, that Employee was "terminated as 'absence without notice'" on November 16. While the word "termination" may refer to either a voluntary or an involuntary work separation, here the Commission found Employer discharged Employee for violating a company policy. See *Turner v. Mitch Murch's Maint. Mgmt. Co.*, ED98665, 2013 WL 1209572 (Mo.App. E.D.2013), citing *Ross v. Whelan Sec. Co.* 195 S.W.3d 559, 565 (Mo. App. S.D.2006).

Employer cites *Ewing v. SSM Health Care*, 265 S.W.3d 882, 886 (Mo.App. E.D. 2008) in support of its contention the Commission erred in finding Employee was discharged. *Ewing*, however, is readily distinguishable. In *Ewing*, the claimant called in to work to report her absences for four work days following the death of her brother without receiving a return call. *Id.* at 884. The claimant then missed three days of work without notifying her employer. *Id.* The claimant testified that on the third day, she did not return to work or call in because she assumed she was fired after not receiving any return calls. *Id.* The Commission found the claimant voluntarily left her employment based upon the facts the employer never notified the claimant she was terminated and the claimant stopped reporting to work. *Id.* at 885. On appeal, this Court upheld the Commission's factual determination that the claimant voluntarily quit, finding there was competent and substantial evidence in the record to support the Commission's finding based upon the evidence that the employer had treated the claimant's actions as a voluntary resignation. *Id.*

In the instant case, the Commission found Employer's assertion at the hearing that Employee voluntarily resigned was not credible in light of Employer's prior assertion that she had been discharged. Unlike in *Ewing*, Employer's position was that Employee had been terminated for violating the attendance policy, and notified her and the Division of such.

Employer argues the Commission erred in not finding that Employee voluntarily quit based upon Employee's assumption of termination, unreported absences, and failure to clarify her employment status following her November 12 meeting with Shoemaker. We disagree.

With regard to the November 12 conversation between Shoemaker and Employee, the parties disputed both the details and the end result, that being whether Shoemaker fired Employee that day. Furthermore, the testimony is clear that the confusion about the implications of the conversation carried over into the parties' communications the following day. However, upon review of the conflicting evidence, the Commission made clear its findings that Employer was not credible; Employee and Employer both attempted unsuccessfully to resolve the matter after the fact; Employee reasonably believed she had been discharged by Shoemaker on November 12; and Employer discharged Employee on November 16 for violating Employer's attendance policy but that such violation was not willful or intentional based upon Employee's reasonable belief that she had already been discharged.

█ Again, the determination of whether an employee voluntarily left her employment or was discharged is a factual determination, to which this Court defers and will affirm if supported by competent and substantial evidence on the record as a

whole. *Lentz,* 380 S.W.3d at 4. As noted by the *Ewing* court, "where 'evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination and it is irrelevant that there is supportive evidence for the contrary finding.'" *Ewing,* 265 S.W.3d at 887, quoting *Barlynn Enters., Inc. v. Foell,* 223 S.W.3d 168, 171 (Mo.App. S.D.2007).

Here, the Commission's finding that Employee did not voluntarily quit and was discharged is supported by competent and substantial evidence in the record. Employer's Points I and II are denied.

### Misconduct–Points III, IV and V

An employee is disqualified from receiving unemployment benefits if the Commission finds she was discharged for misconduct connected with her work. Section 288.050.2. "Misconduct" is defined as:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

Section 288.030.1(23). Each category of misconduct requires the employee to willfully violate the employer's rules and standards. *Nevettie v. Wal–Mart Associates, Inc.,* 331 S.W.3d 723, 727 (Mo.App. E.D. 2011). Generally, the employer has the burden of proving by substantial and competent evidence that the claimant was discharged for misconduct connected with

work. *White v. Wackenhut Corp.,* 208 S.W.3d 916, 918–19 (Mo.App. E.D.2006).

However, Section 288.050.3 provides:

Absenteeism or tardiness may constitute a rebuttable presumption of misconduct, regardless of whether the last incident alone constitutes misconduct, if the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.

Pursuant to this section, once the employer establishes the claimant violated a known attendance policy, the burden shifts to the claimant to show she was not guilty of misconduct. *Johnson v. Div. of Empl. Sec.,* 318 S.W.3d 797, 803–04 (Mo.App. W.D.2010). The claimant bears the risk of non-persuasion. *Id.* at 804. As noted by the Western District of this Court, these "recent amendments suggest that the General Assembly has been attempting to direct the analysis away from the unrealistic use of the concept of 'voluntary quit' and is seeking to show a preference for 'misconduct' analysis in cases in which the employee purports to want to remain employed but is absent." *Id.*

The issue of whether an employee's actions constitute misconduct associated with the employee's work is a question of law that this Court reviews *de novo. Williams v. Enterprise Rent–A–Car Shared Services, LLC,* 297 S.W.3d 139, 142 (Mo.App. E.D.2009).

### Point III

 In its third point, Employer argues the Commission erred in failing to shift the burden of proof to Employee pursuant to Section 288.050.3 because her discharge was a result of a violation of

Employer's attendance policy.[3]

█ In its determination, the Commission noted the general law that the employer has the burden of proving misconduct and that Employer failed to meet its burden. The Commission did not address the applicability of Section 288.050.3's rebuttable presumption of misconduct upon an employee's violation of the employer's known attendance policy. Employer, however, never raised the applicability of Section 288.050.3 or the rebuttable presumption of misconduct at the hearing but instead took the position that Employee voluntarily quit. Although Division records could support a finding as to the parameters of Employer's attendance policy and that Employee was aware of such policy, the evidence is limited and no testimony was adduced on these matters due to Employer's failure to raise the issue. This Court may only address issues that were determined by the Commission and may not consider issues which were not before the Commission. *Taylor v. St. Louis Arc, Inc.*, 285 S.W.3d 775, 776 (Mo. App. E.D.2009). Although Employer's point is waived for appellate review, we briefly address the merits of Employer's argument.

█ Employer is correct that Section 288.050.3 is "a carve-out, or a special provision, to the general rule that the burden of proof shifts to the employer if termination is premised upon an allegation of misconduct." *Hise v. PNK (River City), LLC*, 406 S.W.3d 59, 64 (Mo.App. E.D.2013). "Thus, under certain circumstances, where termination of an employee is premised upon misconduct as it relates to an employer's attendance policy, the burden of proof shifts back to the employee, until rebutted, to establish that he or she is

entitled to unemployment compensation." *Id.* at 65.

Assuming *arguendo* that Employer presented sufficient evidence to raise the rebuttable presumption under Section 288.050.3, the Commission's findings of fact regarding Employee's absences support a finding that Employee rebutted the presumption and the Commission's ultimate determination that Employee's conduct did not amount to misconduct. As already noted, the Commission's determination of whether an employee's actions constitute misconduct associated with the employee's work is a question of law that this Court reviews *de novo. Williams,* 297 S.W.3d at 142.

The Commission found Employee "provided competent and substantial evidence that she was not a no call no show on [November 13, 2012], because she reasonabl[y] believed that she was discharged. There is no evidence that [Employee] willfully or intentionally violated [Employer's] policy[.]" Again, the Commission's factual findings are conclusive if supported by competent and substantial evidence. Section 288.210. Here, the Commission's factual findings are clear, Employee's violation of Employer's attendance policy was not willful or intentional and was done only upon a reasonable belief that she had already been discharged. Because misconduct requires a willful violation of the employer's rules and standards, *Nevettie,* 331 S.W.3d at 727, the Commission's factual findings support the conclusion that Employee rebutted the presumption of misconduct. Thus, even if it could be said that the Commission erred in failing to shift the burden of proof to Employee, no reversible error resulted as the Commis-

---

**3.** On appeal, Employer simply argues that the failure to properly shift the burden of proof automatically requires reversal. Employer provides no analysis as to whether the Commission's factual findings actually support an ultimate finding of misconduct.

sion's factual findings support a finding that Employee was not discharged for misconduct. See *Johnson*, 318 S.W.3d at 807.

Based on the foregoing, Point III is denied.

### Point IV

In its fourth point, Employer argues the Commission erred because it focused solely on intentional or willful violations of Employer's policies while failing to consider whether Employee's alleged misconduct was negligent so as to disqualify Employee from receiving unemployment benefits. Again, Employer never raised this issue before the Commission and instead relied solely on its contention that Employee voluntarily quit. See *Taylor*, 285 S.W.3d at 776 (appellate court may only address issues that were determined by the Commission and may not consider issues which were not before the Commission.). This Court will not find error on the part of the Commission for not analyzing every conceivable unraised alternative, searching for a way to deny a claimant unemployment benefits.

Further, on appeal, Employer fails to provide an analysis of the facts of the case and how those facts demonstrate negligence under the statute, instead simply asserting the Commission needed to eliminate negligence as a potential source of misconduct. An appellant is required to develop the issue raised in its point relied on in the argument portion of the brief. *Carlisle v. Rainbow Connection, Inc.*, 300 S.W.3d 583, 585 (Mo.App. E.D.2009); Rule 84.04(e). When an appellant fails to support a point with relevant legal authority or argument beyond conclusory statements, the point is deemed abandoned. *Id.*

Employer has waived this issue by failing to raise it before the Commission and abandoned the point on appeal. Point IV is denied.

### Point V

In its fifth point, Employer argues the Commission's award is not supported by competent and substantial evidence and is contrary to the overwhelming weight of the evidence in that Employee (a) failed to clarify an ambiguity as to her employment status and (b) had the last opportunity to act in furtherance of her employment and failed to do so.

As already noted, the record indicates Shoemaker and Employee disagreed about the details and consequences of their November 12 conversation and subsequent communications. In the face of the conflicting evidence, the Commission made clear its findings that Employer was not credible; Employee and Employer both attempted unsuccessfully to resolve the matter after the fact; Employee reasonably believed that she had been discharged by Shoemaker on November 12; and Employer discharged Employee on November 16 for violating Employer's attendance policy but that such violation was not willful or intentional based upon Employee's reasonable belief that she had already been discharged.

Employer's argument on appeal that Employee failed to clarify an ambiguity as to her employment status is in direct conflict with the Commission's finding that both parties attempted unsuccessfully to resolve the matter after the fact. This finding by the Commission is supported by Employee's testimony that she attempted to save her job by communicating with Shoemaker via text message and telephone calls following their meeting on November 13. The fact that Shoemaker testified differently does not mean that the Commission's finding is not supported by competent and substantial evidence. See *Dixon*,

106 S.W.3d at 539–40 (appellate court defers to the Commission's determinations as to the weight of the evidence and the credibility of the witnesses).

The same can be said of Employer's contention that Employee continued to have an obligation to report her anticipated absences to Employer following her November 12 meeting with Shoemaker. Employer's argument ignores the necessary implications of the Commission's factual finding that Employee had a reasonable belief that she had been discharged on November 12.

Based on the foregoing, Employer's Point V is denied.

### Conclusion

The judgment of the Commission is affirmed.

LAWRENCE E. MOONEY, P.J., and ROBERT G. DOWD, Jr., J., concur.