

# Missouri Court of Appeals

## Southern District

### Division One

In the Matter of
KATRINA BARNES,

   Claimant/Appellant,

 vs.

JASPER PRODUCTS, L.L.C.,

   Employer/Respondent,

and MISSOURI DIVISION
OF EMPLOYMENT SECURITY,

   Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. SD32858
Filed: January 24, 2014

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### **REVERSED AND REMANDED WITH DIRECTIONS.**

Katrina Barnes ("Barnes") appeals the decision of the Labor and Industrial Relations Commission ("Commission") affirming and adopting the decision of the Appeals Tribunal of the Missouri Division of Employment Security ("Appeals Tribunal") finding Barnes is disqualified from receiving unemployment benefits from Jasper Products, L.L.C. ("Employer"), because she

was discharged for misconduct connected with work. We reverse the Commission's decision and direct the Commission to enter an order finding that Barnes is not disqualified for benefits by reason of her discharge from work in accordance with this opinion.

**Facts and Procedural History**

Barnes had worked fulltime as a packing operator for Employer from March 31, 2006, until March 28, 2013, when she was terminated. Barnes was a full-time employee working a shift from 6:00 a.m. to 6:30 p.m.

Employer's "Personnel Policies and Procedures" ("policy") provided that four full-occurrence absences in a rolling twelve-month period would result in termination. The policy provided "[o]ther than for approved absences, . . . all situations, which result in an Employee missing work for which they were scheduled, will constitute an absence." Furthermore, Employer's policy called for the following corrective action over a rolling twelve-month period for "Employees who exhibit excessive absenteeism by missing work over and above that which is allowed in the Personal Time Policy":

| | |
|---|---|
| - One absence | verbal warning |
| - Two absences | written warning |
| - Three absences | written warning in lieu of decision making leave |
| - Four absences | termination |

For absences or "early leaves," Employer counted an increment of the policy infraction, depending on how much time the employee missed. Employer's policy classified "Late or Early Leaves" as follows:

| | |
|---|---|
| 1 minute to 15 minutes | 1/4 of an absence |
| 16 minutes to 2 hours | 1/3 of an absence |
| 2 hours to 1/2 of shift missed | 1/2 of an absence |
| 1/2 or more of scheduled shift missed | full absence |

2

According to the policy, an employee must notify their manager "at least one hour before the start of the Employee's shift" if he or she will be tardy or absent. However, Scott Denny ("Denny"), the full-time Human Resources Manager for Employer, testified that "as long as it's before the shift start time" is enough notice that the employee is going to be tardy or absent.

From October 2, 2012, until March 28, 2013, Barnes was given a verbal warning, two written warnings, and a termination notification. Employer alleged Barnes was given these warnings, and ultimately a termination notification, for missing work on September 22, 2012; the week of December 3, 2012 (which counted as only one absence by Employer); arriving late on December 22, 2012; one half day on February 8, 2013; a full day on March 25, 2013; and arriving late for her shift on March 28, 2013.

On April 1, 2013, Barnes filed an application for unemployment benefits, and Employer filed a protest to Barnes' claim. Employer protested and alleged Barnes was terminated for "Misconduct associated w/work. Violations of attendance policy."

On April 19, 2013, the "Deputy's Determination Concerning Claim for Benefits" was filed finding Barnes was "disqualified from 03/31/13 because [Barnes] was discharged by . . . Employer on 03/28/13 for misconduct connected with work."[1] The deputy further found Barnes was discharged because of her March 28, 2013 absence and Barnes "overslept." Barnes then filed a "Notice of Appeal to Appeals Tribunal" on April 29, 2013.

On May 23, 2013, the "Appeals Referee" held a hearing by telephone conference. Barnes and Denny testified with respect to each of the incidents Employer asserted were a basis for Barnes' termination.

---

[1] "If a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits . . . ." § 288.050.2, RSMo Cum.Supp. 2006.

3

Denny testified Barnes' first warning, a verbal warning, was given on October 2, 2012, for an absence on September 22, 2012.[2] Her next warning was a written warning on December 29, 2012, for her absence the week of December 3 and a tardy on December 22, 2012. Barnes, a widow and mother of a teenage daughter, was absent the week of December 3 because her daughter was sick and she had to seek medical treatment for her daughter's mental health issues. Barnes notified her supervisors she was having difficulties with her daughter and would be absent. Employer noted that Barnes would have one point against her on the policy for missing the week of December 3. It was communicated to Barnes that if she "did seek some medical attention for the daughter to notify us . . . and we would see if it was a qualifier under FMLA[.]"

With respect to December 22, 2012, Barnes was tardy because of car trouble that required her to get a jump start from a neighbor.

Barnes received her second written warning on February 15, 2013, regarding her absence on February 8, 2013. Denny testified Barnes missed all of February 7, but used personal-time benefits to cover this absence. She also missed February 8, but only had six hours of personal-time benefits to cover the shift so February 8 resulted in a half absence.

Barnes testified she missed work on February 7 and 8 due to her dog's surgery and cancer diagnosis, and there was no one else that could have taken care of this matter for her. Barnes further testified that February 7 was her day off, and even though she had had been "drafted" to come to work on her scheduled day off, she advised Employer the day before that she would not be able to make it to work. Barnes claimed Employer applied her personal time to February 7, but that day was her normal day off.

---

[2] Although this warning was in writing, it became the first warning in Employer's corrective action policy because Barnes had a violation fall off when the 12-month period surpassed the previous corrective action. As a result, this warning went from a step two first written warning to a step one verbal warning.

4

Finally, on March 28, 2013, Barnes received her "Termination Notification" regarding her absence on March 25 and a tardy on March 28. Denny claimed Barnes signed up for an extra overtime shift for March 25, but called in and she did not work the shift. Denny also testified Barnes was twenty minutes late for her shift on March 28, 2013, and it was a combination of those two March incidents that led to her termination.

Barnes testified her furnace went out on March 25, her 15-year old daughter was home out of school, and she did not want to leave her daughter there with the furnace not working. Barnes had to call someone to fix her furnace, and then wait to let the repairmen in. Barnes testified the furnace company required someone 18 or older to be there to let them in, and she did not have anyone else that could do this.

Barnes testified she was eleven minutes late on March 28, 2013, because her alarm clock did not go off and she woke up late.[3] She "texted [her] . . . lead" to say she would be a few minutes late but was on her way to work.

On May 29, 2013, the Appeals Tribunal affirmed the deputy's determination that Barnes was disqualified from receiving unemployment benefits. The Appeals Tribunal found Barnes was discharged on March 28, 2013, "for attendance violations." The Appeals Tribunal made findings of fact that:

> [Barnes] received prior warnings on December 29, 2012[,] and [on] February 15, 2013[,] was informed that she had accrued three absences within a rolling year. At the time of her discharge[,] [Barnes] had accrued four absences, which was the maximum attendance points allowed. From December 29, 2012[,] until the time of her separation[,] [Barnes] was absent four times and tardy twice in violation of [Employer]'s policy. [Barnes] gave various explanations for these attendance violations, stating the illness of her daughter, in addition to car problems, furnace problems, oversleeping and dog's surgery.

---

[3] In her Notice of Appeal to the Appeals Tribunal, Barnes claimed she woke up to a blinking alarm clock because the power went out.

5

The Appeals Tribunal concluded that "[Barnes] gave a plethora of explanations for her attendance violations, which included family illness, car problems, dog's surgery, furnace repairs, and oversleeping, etc. Accordingly, the majority of [Barnes'] absences were unavoidable." However, the Appeals Tribunal concluded that Barnes'

> repeated attendance violations were willful and intentional violations of [Employer]'s rules and policies, as to constitute misconduct, in that she was aware of [Employer]'s policy, she violated the policy, she did not attempt to improve her attendance and continued to violate the policy after receiving a final warning, knowing that her job was in jeopardy.

The Appeals Tribunal concluded that Barnes was disqualified from receiving unemployment benefits.

On June 21, 2013, Barnes filed her "Application for Review" to the Commission. On July 18, 2013, the Commission affirmed and adopted the decision of the Appeals Tribunal stating the decision was fully supported by competent and substantial evidence on the whole record and "is in accordance with the relevant provisions of the Missouri Employment Security Law." This appeal followed.

On appeal, Barnes alleges there was not substantial competent evidence to support the determination of "misconduct," and the facts found by the Commission do not support the award because "the Commission found a majority of [Barnes'] absences were 'unavoidable,' and [Barnes'] violations of the attendance policy lacked willfulness or deliberateness." Barnes also argues the Commission misapplied the law in that Employer failed to meet its burden of proving misconduct after Barnes rebutted the presumption of misconduct by showing her absences were "unavoidable."

In response to Barnes' arguments, Employer claims there was substantial competent evidence to support the Commission's award "in that [Barnes'] behavior demonstrated the level

6

of culpability required to satisfy the statutory definition of misconduct." Furthermore, Employer claims the Commission did not misapply the law "because Employer presented substantial competent evidence of [Barnes'] misconduct in proving that [Barnes] repeatedly violated 'a known, understood and reasonable work rule.'"

While Barnes raises two points on appeal, we find the first point dispositive. The issue for our determination, therefore, is whether Barnes' attendance violations constituted misconduct in light of the Commission's finding that the majority of Barnes' absences were "'unavoidable.'"

## Standard of Review

"Article V, section 18 of the Missouri Constitution provides for judicial review of the commission's decisions to determine whether they are supported by competent and substantial evidence upon the whole record." *Fendler v. Hudson Services*, 370 S.W.3d 585, 588 (Mo. banc 2012) (internal quotation and citation omitted). "The appellate court's review of the Commission's decision[4] in an unemployment compensation case is governed by section 288.210[.]" *Harris v. Division of Employment Sec.*, 350 S.W.3d 35, 38 (Mo.App. W.D. 2011). Section 288.210, RSMo 2000 provides:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or

---

[4] When the Commission adopts the decision of the Appeals Tribunal, we consider the Appeals Tribunal's decision to be the Commission's for purposes of our review. *Ashford v. Division of Employment Sec.*, 355 S.W.3d 538, 541 (Mo.App. W.D. 2011).

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

§ 288.210.

While we defer to the Commission's findings of fact, so long as they are supported by substantial and competent evidence, we do not defer to the Commission's conclusions of law or application of law to the facts. *Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 898 (Mo.App. E.D. 2008).[5] "Whether the Commission's findings support the conclusion that an employee was guilty of misconduct is a question of law." *Id.* (internal quotation and citation omitted). We review issues of law *de novo*. *Comeaux v. Convergys Customer Mgmt. Group, Inc.*, 310 S.W.3d 759, 762 (Mo.App. E.D. 2010).

We keep in mind that "[b]ecause the purpose of Missouri's unemployment compensation act is to provide benefits for those unemployed through no fault of their own, we review the disqualifying provisions in the act strictly and against the disallowance of benefits to unemployed but available workers." *Frisella*, 269 S.W.3d at 898 (internal quotation and citation omitted).

## Analysis

Barnes' first point alleges there was not substantial competent evidence of "misconduct" as a matter of law, and the facts found by the Commission do not support the award because the Commission found a majority of Barnes' absences "'were unavoidable.'" Section 288.050.2[6] provides for the disqualification of an employee from unemployment compensation benefits

---

[5] We also defer to the Commission on matters of witness credibility and resolution of conflicting evidence. *Harris*, 350 S.W.3d at 39.

[6] All references to statutes are to RSMo Cum.Supp. 2006, unless otherwise indicated.

where there is "misconduct connected with the claimant's work[.]" "Misconduct" is defined in section 288.030.1(23) as

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

"Work-related misconduct" must involve a willful violation of the rules or standards of the employer. *Murphy v. Aaron's Auto. Prods.*, 232 S.W.3d 616, 621 (Mo.App. S.D. 2007). Without evidence that a claimant "deliberately or purposefully erred, he cannot properly be found to have committed an act of misconduct." *Id.*

Generally, an employer has the burden of proving by "substantial and competent evidence that the claimant was discharged for misconduct connected with work." *Wheeler v. Pinnacle Automotive Protection, Inc.*, 413 S.W.3d 721, 728 (Mo.App. E.D. 2013). However, section 288.050.3 was amended in 2006 to specifically provide that absenteeism or tardiness may constitute a "rebuttable presumption of misconduct":

> Absenteeism or tardiness may constitute a rebuttable presumption of misconduct, regardless of whether the last incident alone constitutes misconduct, if the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.

§ 288.050.3.

"Pursuant to this section, once employer establishes the claimant violated a known attendance policy, the burden shifts to the claimant to show she was not guilty of misconduct." *Wheeler*, 413 S.W.3d at 728; *see also* *Johnson v. Div. of Empl. Sec.*, 318 S.W.3d 797, 803 (Mo.App. W.D. 2010) ("The General Assembly has recognized the merit of reasonable attendance policies in section 288.050.3 by amending that subsection to allow violation of

9

attendance policies to be considered to be 'misconduct' disqualifying the claimant when the claimant fails to rebut the presumption of misconduct."). The claimant then bears the risk of non-persuasion. *Wheeler*, 413 S.W.3d at 728.

We assume, arguendo, that Employer raised the rebuttable presumption under section 288.050.3.[7] Barnes testified she was aware of Employer's attendance policy, and Employer presented testimony that Barnes violated Employer's attendance policy. The burden then shifted to Barnes to prove her attendance violations did not constitute misconduct. *See Hise v. PNK (River City), LLC*, 406 S.W.3d 59, 64 (Mo.App. E.D. 2013). Under a misconduct analysis, the issue is "whether the degree of fault amounts to sufficient culpability to warrant a denial of benefits[,]" and this analysis allows the circumstances of the absences to be considered. *Johnson*, 318 S.W.3d at 805. Therefore, once the burden shifted to Barnes under section 288.050.3, the circumstances of her attendance violations could be considered. *Id.*

Here, the Commission considered Barnes' explanations for her attendance violations, and then determined "the majority of [Barnes'] absences were unavoidable." Once reaching this conclusion, the Commission improperly applied the law to the facts in determining whether Barnes' attendance violations constituted misconduct.[8]

---

[7] Under section 288.050.3, the first determination is whether Employer established Barnes violated a known attendance policy so that the rebuttable presumption applies. Neither party here alleges the rebuttable presumption does not apply, but rather disagrees as to whether the presumption of misconduct was then rebutted by Barnes. Nonetheless, we note there was sufficient evidence to raise the rebuttable presumption under section 288.050.3. First, Barnes herself testified she was aware Employer had an attendance policy and she could be terminated if she had four absences within a rolling 12-month period. Furthermore, Denny testified to Employer's attendance policy, which was included as an exhibit before the Appeals Tribunal. In addition, Barnes signed a document, which was also admitted as an exhibit, acknowledging she had reviewed and read a copy of Employer's "Employee Handbook."

[8] As previously noted, the Commission's determination of whether an employee's actions constituted misconduct is a question of law that we review *de novo*. *Frisella*, 269 S.W.3d at 898.

10

It is a well-established rule that absences due to illness or family emergency, where properly reported to the employer, do not constitute willful misconduct. . . . The reason for this rule is obvious -- if absences are due to illness or family emergency, a claimant has not *willfully* violated an employer's rule. Rather, the employee's absence is fairly attributable to circumstances beyond her reasonable control.

*Robinson v. Courtyard Management Corp.*, 329 S.W.3d 736, 740 (Mo.App. E.D. 2011) (internal citations omitted) (emphasis in original).[9]

Here, the Commission specifically concluded "[Barnes] gave a plethora of explanations for her attendance violations, which included family illness, car problems, dog's surgery, furnace repairs, and oversleeping, etc. Accordingly, the majority of [Barnes'] absences were unavoidable." The Commission's findings that the majority of Barnes' absences "were unavoidable," do not support the conclusion that Barnes' "repeated attendance violations were willful and intentional violations of [Employer]'s rules and policies, as to constitute misconduct," as a matter of law. "Because the factors leading to [Barnes'] tardiness were entirely outside of her own control [(family illness, car problems, furnace repair)] any violation or disregard of her employer's rules and interests cannot fairly be classified as 'willful.'" *Cubit v. Accent Marketing Services, LLC*, 222 S.W.3d 277, 281 (Mo.App. W.D. 2007).[10]

The Commission's finding that "the majority" of the absences were unavoidable, rather than a finding as to which specific absences were unavoidable, leads us to conclude that the Commission considered the circumstances surrounding each of Barnes' absences and that the majority of those absences were not supported by evidence that Barnes willfully or intentionally violated Employer's attendance policy. Since misconduct requires a willful violation of the

---

[9] The 2006 amendment to section 288.050.3 did not abrogate this well-settled rule. *See Dameron v. Drury Inns, Inc.*, 190 S.W.3d 508, 511 (Mo.App. E.D. 2006).

[10] As noted in *Cubit*, the 2006 revision of section 288.050.3 was not in effect during the time in question in that case. 222 S.W.3d at 283 n.5. Nonetheless, it is instructive on the issue of "willfulness" of a claimant's violations, which was not changed by the 2006 amendment to section 288.050.3.

employer's rules, the Commission's factual findings support the conclusion that Barnes rebutted the presumption of misconduct for the majority of her absences. *Wheeler*, 413 S.W.3d at 729. If any of Barnes' absences led to a conclusion of misconduct, the Commission did not make that specific finding.

We reiterate our standard of review requires us to defer to the Commission's finding of fact so long as supported by competent and substantial evidence. *Frisella*, 269 S.W.3d at 898. While we defer to the Commission's findings of fact, our decision in this case should not be cited as precedent that absences due to "car problems, [a] dog's surgery, furnace repairs, and oversleeping," in isolation, are "unavoidable absences" and, therefore, do not constitute misconduct. Our decision in this case is based only on the record before this Court. Therefore, this decision should not be used to conclude absences due to "car problems, [a] dog's surgery, furnace repairs, and oversleeping" always establish sufficient evidence to rebut the presumption of misconduct. Rather, the facts of each case, including the circumstances surrounding each absence, should be considered.

Furthermore, after Barnes presented her evidence to rebut the presumption of misconduct, Employer presented no evidence that the reasons given by Barnes for her absences were false or that she failed to report the absences in compliance with Employer's policy. Instead, Employer argues Barnes "'*may* prevail'" upon a finding the attendance violations were "'beyond . . . her control,'" but a finding "that her absences were unavoidable allowed [Barnes] to prevail but did not mandate that result." (Emphasis in original). This argument is opposite to Missouri's "well-established rule" that absences "due to family illness or family emergency" do not constitute willful misconduct. *See Robinson*, 329 S.W.3d at 740; *Dameron*, 190 S.W.3d at 511.

12

Employer further argues Barnes "could also be guilty of misconduct for failing to allot more of her allowable absences to emergencies[.]" Yet, there is no evidence in the record as to how Barnes "allotted" her "allowable absences," or any legal support that any such "failure to allot" would *actually* constitute misconduct under Missouri law. We are not left to guess as to what constitutes misconduct because it has been defined in section 288.030.1(23). Misconduct involves willful disregard of employer's interest, a deliberate violation of an employer's rules, an intentional and substantial disregard of the employer's interest or employee's duties to employer, or negligence amounting to wrongful intent or evil design. *Under the evidence in the record before this Court*, we find in this case that "failing to allot more of her allowable absences to emergencies" does not meet the definition of misconduct found in section 288.030.1(23).

The Commission's factual findings are that a majority of Barnes' violations of Employer's attendance policy were unavoidable. When we apply the law to the Commission's factual findings, Barnes rebutted the presumption of misconduct. Therefore, we find Barnes' attendance violations did not constitute misconduct in light of the Commission's finding that her violations "were unavoidable." Accordingly, we grant Barnes' Point I.

We reverse the Commission's finding that Barnes is disqualified for benefits, and direct the Commission to enter an order reversing the deputy's and Appeals Tribunal's decisions, and finding that Barnes is not disqualified for benefits by reason of her discharge from work in accordance with this opinion.

WILLIAM W. FRANCIS, JR., C.J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - Concurs

DANIEL E. SCOTT, J. - Concurs

13