Thomas TURNER, Employee/Appellant,

v.

PROFFER TRANSPORTATION, INC., Employer/Respondent,

and

Division of Employment Security, Respondent.

No. ED 93773.

Missouri Court of Appeals, Eastern District, Division Two.

May 18, 2010.

John J. Ammann, St. Louis University Legal Clinic, St. Louis, MO, for Employee/Appellant.

Proffer Transportation, Inc., Acting pro se, Park Hills, MO, for Employer/Respondent.

Bart A. Matanic, Division of Employment Security, Jefferson City, MO, for Respondent.

## SHERRI B. SULLIVAN, P.J.

### Introduction

Thomas Turner (Employee) appeals from the Labor and Industrial Relations Commission's (Commission) decision finding that he was disqualified for unemployment benefits. We reverse and remand.

### Factual and Procedural Background

On April 2, 2009, a deputy for the Missouri Division of Employment Security (Division) determined that Employee was disqualified from receiving unemployment benefits based on a finding that Employee voluntarily left his work on March 17, 2009, without good cause attributable to his work or employer. Employee appealed the deputy's decision to the Division Appeals Tribunal. The Appeals Tribunal held a hearing on June 3, 2009, at which the following evidence was adduced.

Employee worked as an over-the-road truck driver for Proffer Transportation Incorporated (Proffer or Employer) for three years. On March 10, 2009, Employee was called in to work to make a run from Park Hills, Missouri to North Platte, Nebraska. Employee was scheduled to leave Park Hills at 3:00 p.m. but was delayed until 6:00 p.m. due to a loading issue. Proffer is responsible for loading the truck. Employee's load was scheduled for arrival in North Platte at 5:30 a.m. on March 11.

Prior to leaving, Employee discussed "the problem of legal logs" with Terry Walker (Walker), a manager and dispatcher for Employer. Employee told Walker that there was no way possible for him to drive the 728 miles to North Platte legally by 5:30 the next morning. Walker testified that the drive from Park Hills to North Platte takes 11 hours and that if Employee left by 6:00 p.m. he could have made it to North Platte by 5:00 a.m. Employee testified that while the North Platte run is logged in as taking 11 hours, the trip actually takes him 13 hours. Employee testified that to do the run in 11 hours would require an average speed of 68 miles an hour which is impossible because there are 200 miles of speed limits of 55 to 60 miles an hour or less and there are 6 weigh stations.

After an hour and a half of driving, Employee stopped for dinner. Employee continued to drive until 11:15 p.m., before taking his ten-hour break in Sweet Springs. Employee testified that he stopped because he was tired and, since he knew he could not make his drop-off appointment the next morning, he thought he would be better able to schedule the pickup of a return load if he took his break then.

The next morning, Employee drove approximately 10 miles before Proffer called and told Employee to stop and wait for another driver to pick up Employee's load. After Employee transferred the load to the other driver and began driving back to Park Hills, Walker called Employee and informed him that he was suspended. Employer told Employee he needed to clean out the truck so that another driver could use it but did not advise Employee how long he was suspended. Employee collected his belongings and returned with the truck to Park Hills.

Employee called Proffer over the next two days to inquire about the length of his suspension. Walker advised Employee that he did not know and that Bengy Proffer, the owner of the company, was on

vacation and would return the following Monday.

Employee testified that he called Proffer the following Monday to determine the length of his suspension and Walker could not give him an answer. Employee testified he told Walker, "Well, I'm going to file for my unemployment," and Walker told him "that's the thing to do."

Employee testified he called Proffer again the next day, Tuesday, March 17, and told Walker that he needed to know how long he was suspended. Employee testified that at that time he also told Walker that Proffer could not continue making illegal runs and turning in "legal" log books. Employee admitted that when he called Employer and talked to Walker on March 17, that he told Walker "to stick his head up Bengy's ass" and hung up the phone. Employee indicated he said this because he was upset but denied saying that he quit.

Employee testified that he called Proffer several more times about some personal items he had forgotten in the truck. Employee testified that on March 24, he went to Proffer's office to pick up his personal things. Employee testified that while he was there he said to Walker, "I guess I'm still suspended," and Walker stated, "I don't know." Employee testified that no one ever told him that he could return to work.

Walker testified that Employee was allowed to be on duty for 14 hours, 11 of which could have been drive time. Walker testified that he suspended Employee on March 11, 2009, because he felt that Employee did not make a sufficient attempt to reach North Platte in time.

Walker acknowledged that Employee did communicate with Employer after his suspension about whether Employee should return to work. Walker testified that he told Employee that Mr. Proffer was on vacation until the following Monday. Walker testified that when Employee called back on March 17, and Walker told Employee that he still did not have a definite answer for him, Employee told him that "he could stick his head up Bengy's ass and that he quit" and hung up. Walker testified that he considered the employment relationship over on March 17.

Appellant subsequently filed a request for unemployment benefits. Employer protested the claim, alleging that it considered Employee telling Walker "to stick his head up Benjy's ass" and hanging up on Walker on March 17, to be Employee's resignation. Employer did not indicate that Employee specifically stated that he quit or that they discharged Employee for misconduct.

On June 9, 2009, the Appeals Tribunal Referee (Referee) issued her decision denying Employee benefits. The Referee found that Employee's comment and action in hanging up the phone on Walker gave Proffer reason to believe that Employee did not intend to return to his employment. The Referee found that Employee was not informed that he was discharged and the suspension had not become a discharge by operation of Section 288.040.2 [1] because it had not yet lasted four weeks. The Referee also found that while Employee was understandably concerned because he could not get information about the date he should return from the suspension, he had only been off work for about one week and he had not given Employer

---

**1.** Section 288.040.2 RSMo Supp.2008 provides that suspensions lasting four weeks or more shall be treated as discharges.

enough opportunity to resolve his concerns about the suspension or the legal operation of the vehicle. The Referee concluded that Employee voluntarily left his employment without good cause attributable to the work or Employer on March 17, 2009. Employee appealed the Appeals Tribunal's decision to the Commission.

On September 15, 2009, the Commission issued its order affirming the decision of the Appeals Tribunal and adopting the Tribunal's decision in part and making additional findings. The Commission found that after Employee was suspended on March 11, 2009, he called Walker several times over the next several days to inquire as to the status of his suspension and his employment. The Commission found that Employee was told that Mr. Proffer would be back on March 17, 2009. When Employee called back on that date and was unable to speak with anyone who could make a determination as to his employment status, Employee made a rude comment and hung up on Walker. The Commission found that this was the last time that Employee attempted to contact Employer regarding his employment status. Relying on the *Mo. Aztar Riverboat Gaming Co., LLC. v. Janis,* 125 S.W.3d 907 (Mo.App. W.D.2004), the Commission found that Employee was not indefinitely suspended by Employer. The Commission also found that while Employee was understandably frustrated that he was unable to ascertain the status of his employment, he made no further effort to contact Employer after his comments to Walker on March 17, 2009. The Commission found that Employee's comments to Walker and his failure to try to speak with Employer after that date showed bad faith and demonstrated Employee's intent to quit. Based on these findings, the Commission concluded that Employee voluntarily left his employment without good cause attributable to the work or to Employer.

One of the three commissioners filed a dissenting opinion, stating that he believed the majority was placing undue emphasis on Employee's frustrated comments in finding that Employee voluntarily quit. The dissent found that Employee demonstrated reasonableness and good faith in the face of Employer's persistent equivocation, which included Employer telling Employee that it would be a good idea for him to file for unemployment. The dissent found that even if this could be classified as a voluntary quit, Employee established that that he terminated his employment for good cause attributable to the work and Employer.

This appeal follows.

### Points on Appeal

In his first point on appeal, Employee argues that the Commission erred in denying him unemployment benefits because he did not voluntarily quit under Section 288.050.1(1)[2] in that he was indefinitely suspended, he made repeated phone calls to his employer to inquire about the status of his employment during his suspension, and Employer never asked Employee to return to work or to meet in order to discuss his suspension and the status of his employment.

In his second point on appeal, Employee argues that the Commission erred in denying unemployment benefits to Employee because even if this Court determines that Employee voluntarily quit under Section 288.050.1(1), Employee has established that he terminated employment for good cause attributable to work and to Employer in that he believed Employer was requiring him to drive illegally fast and falsify log books and Employer continuously

2. All statutory references are to RSMo 2006, unless otherwise indicated.

refused to give him an answer about the status of his employment.

In his third point on appeal, Employee argues that the Commission erred in denying him unemployment benefits because even if this Court determines Employee was terminated from his employment under Section 288.050.2, Employee's refusal to drive illegally and falsify log books in order to meet Employer's demands and his rude comment to a supervisor do not rise to the level of statutory "misconduct" which would disqualify him from benefits. Employee argues that Employer failed to meet its burden of establishing "misconduct."

## Standard of Review

On appeal from a decision in an unemployment benefits proceeding, this Court may modify, reverse, remand for rehearing, or set aside the Commission's decision upon a finding that (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence to warrant making the award. Section 288.210.

■ This Court defers to the Commission's determinations as to the weight of the evidence and the credibility of the witnesses. *Dixon v. Division of Employment Sec.*, 106 S.W.3d 536, 539–40 (Mo. App. W.D.2003). Absent fraud, the Commission's findings of fact are conclusive if supported by competent and substantial evidence. Section 288.210. This Court, however, is not bound by the Commission's conclusions of law or its application of the law to the facts. *Ayers v. Sylvia Thompson Residence Center*, 211 S.W.3d 195, 198 (Mo.App. W.D.2007).

■ When reviewing the Commission's decision, we look at the whole record, not merely at the evidence that supports the Commission's decision, to determine whether there is sufficient competent and substantial evidence to support the award. *Reno v. Tyson Poultry, Inc.*, 204 S.W.3d 347, 350 (Mo. App. W.D.2006); *Scrivener Oil Co., Inc. v. Division of Employment Sec.*, 184 S.W.3d 635, 638 (Mo.App. S.D.2006). The evidence is viewed objectively, not in the light most favorable to the Commission's decision. *Reno*, 204 S.W.3d at 350. "A decision that is contrary to the overwhelming weight of the evidence in the record is not supported by competent and substantial evidence." *Janis*, 125 S.W.3d at 909.

## Discussion

■ The first issue on appeal is whether the Commission erred in determining that Employee voluntarily left his employment.

■ A claimant who voluntarily leaves his employment without good cause attributable to the work or employer is ineligible for unemployment benefits. Section 288.050.1. An employee voluntarily leaves his work, as opposed to being discharged, dismissed or laid off, when he leaves of his own accord and volition. *Miller v. Help At Home, Inc.*, 186 S.W.3d 801, 806 (Mo.App. W.D.2006). The claimant has the burden of proving that he did not leave his employment voluntarily, or, that if he did, he did so with good cause. *Id.* The Commission's determination of whether an employee voluntarily left his employment or was discharged is generally a factual question. *Moore v. Swisher Mower & Machine Co., Inc.*, 49 S.W.3d 731, 738 (Mo.App. E.D.2001).

In this case, we find that the Commission's finding that Employee voluntarily left his employment is not supported by competent, substantial evidence in the record.

Initially, it must be noted that the Commission's finding that Employee did not attempt to contact Employer regarding his employment status subsequent to March 17, is wholly unsupported by the record. Employee testified that he contacted Proffer several times following the March 17 conversation to inquire about some of his personal items and that he went to Proffer's office to pick up these items on March 24. Employee testified that while there, he said to Walker, "I guess I'm still suspended," and Walker stated, "I don't know."

 While the Commission determines the weight and credibility of the evidence, the Commission may not ignore relevant evidence that is completely undisputed and not shown to be disbelieved or not credible. *Moore*, 49 S.W.3d at 738. There is nothing in the record to support the Commission's finding that Employee did not continue to contact Employer or to inquire about his employment status following Employee's March 17 confrontation with Walker. Employee's testimony was undisputed, and the Commission did not specifically find Employee's testimony unbelievable. In the absence of contradictory evidence or a credibility determination, the Commission was not free to disregard Employee's testimony. The Commission's finding that Employee did not inquire about his employment status following his March 17 confrontation with Walker is not supported by competent and substantial evidence.

Likewise, viewing the whole record and the evidence contained therein objectively, the Commission's finding that Employee voluntarily left his employment is contrary to the overwhelming weight of the evidence.

The Commission based its finding that Employee voluntarily left his employment on Employee's actions on March 17, when he made a rude comment and then hung up the phone on Walker, combined with Employee's failure to contact Employer following that confrontation. As already noted, the Commission's finding that Employee failed to contact Employer after March 17 is unsupported by competent and substantial evidence.

In addition, while the Commission places significant emphasis on Employee's rude comment and actions, the Commission ignored Employee's undisputed testimony that Employer encouraged Employee to file for unemployment before the offending conversation. Employee testified that on the Monday following his suspension, he called Proffer and again asked Walker about the length of his suspension. When Walker could not give Employee an answer, Employee told Walker that he was going to file for unemployment. Employee testified that Walker responded: "[T]hat's the thing to do." As undisputed testimony, the Commission could not disregard or ignore this testimony which was not shown to be disbelieved or not credible. *Moore*, 49 S.W.3d at 738.

It is difficult to interpret Walker's response as anything other than a direct implication that Employee had already, or in the near future was going to be, discharged by Employer. This implication, coupled with Employer's repeated refusal to set any parameters on Employee's suspension despite Employee's continuous requests for information, demonstrates Employer's intent to discharge Employee.

Employee's rude comment and actions on March 17 are not indicative of an intent to quit, but were the result of his justified frustration with Employer's inability or refusal to clearly inform Employee of the status of his employment. The Commission itself found that Employee was understandably frustrated by his inability to as-

certain the status of his employment in spite of his numerous attempts to do so.

Viewing the evidence in the record objectively, the overwhelming weight of the evidence indicates that Employee did not voluntarily leave his employment. The record reveals that, after being suspended for an indeterminate period of time, Employee repeatedly took steps to preserve his employment by frequently calling Employer to inquire about the status of his employment. After repeatedly being put off by Employer, Employer encouraged Employee to file for unemployment. In spite of this, the record indicates that Employee made at least two more attempts to determine the status of his employment and to preserve his job. Employer never informed Employee if, or when, Employee could return to work from his suspension. Based on the foregoing, we find that the Commission's finding that Employee's rude comment and actions constituted a voluntary quit is unsupported by competent and substantial evidence.

Because we find that the Commission erred in finding that Employee voluntarily quit, we need not address Employee's remaining points on appeal.

 Employer argues, in the alternative, that this Court should affirm the Commission's finding that Employee is disqualified from benefits because, if Employer is found to have terminated Employee, Employer demonstrated that Employee's actions constituted misconduct. In its brief, Employer requests this Court to affirm on the record and does not suggest that remand is necessary for additional factual finding by the Commission.

However, this issue was not raised by Employer in its protest to Employee's claim for benefits and was not considered by the Commission. As such, the Commission did not make any findings of fact or conclusions related to this issue in its determination. In light of the record on appeal and Employer's apparent failure to raise this issue before the Commission, this Court will not consider Employer's contention that the Commission's award may be affirmed on this basis. See *Davis v. Transportation Sec. and Div. of Employment Sec.*, 295 S.W.3d 594, 597 (Mo. App. E.D.2009), quoting *Jones v. GST Steel Co.*, 272 S.W.3d 511, 515 (Mo.App. W.D.2009) (" 'Issues not raised before the Commission may not be raised on appeal.' ").

### Conclusion

The Commission's decision denying Employee unemployment benefits on the basis that he left work voluntarily is reversed, and the case is remanded with directions to remove Employee's disqualification.

ROBERT G. DOWD, JR., J., and PATRICIA L. COHEN, J., concur.