**Randolph DRAKE, Appellant,**

v.

**Thomas E. LENGEL and Division of Employment Security, Respondents.**

**No. WD 75935.**

Missouri Court of Appeals, Western District.

July 16, 2013.

Randolph Drake, St. Joseph, Appellant Pro Se, for appellant.

Bart A. Matanic, Jefferson City for State of MO.

Thomas E. Lengel, St. Joseph, Respondent Pro Se, for respondent.

Before Division Three: LISA WHITE HARDWICK, Presiding Judge, MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

LISA WHITE HARDWICK, Judge.

Randolph Drake appeals from the order of the Labor and Industrial Relations Commission finding that he is not eligible for unemployment benefits because he voluntarily quit his employment without good cause attributable to his work or his employer. For the reasons explained herein, we find no error and affirm the Commission's order.

### FACTUAL AND PROCEDURAL HISTORY

Randolph Drake worked for Thomas Lengel at Lengel's Auto Service for fourteen years as an auto mechanic. After Drake resigned his employment with Lengel on August 3, 2012, he filed a claim for unemployment benefits. A deputy determined that Drake was disqualified from receiving unemployment benefits because he left work voluntarily without good cause attributable to his work or employer.

Drake appealed the deputy's determination to the Appeals Tribunal of the Division of Employment Security. The Appeals Tribunal held a telephone conference hearing on October 11, 2012, during which Drake testified. Lengel did not participate in the hearing.

Drake testified that he quit his job because "[he] was not given 40 hours a week." Drake said that he worked forty hours a week when he first began working for Lengel in 1998. During the sixteen months before his resignation, Drake's hours fluctuated from eleven to forty hours a week. That was not the first time his hours had been reduced. In the past his hours had fluctuated when business decreased, but his hours had always increased as soon as business picked back

up. However, this time his low hours remained inconsistent because Lengel began performing more of the mechanic work himself when business improved. Drake also testified that Lengel "took away [his] uniform benefits," which left Drake responsible for replacing his own uniform.

Drake testified that, prior to his resignation, he asked Lengel if he could return to working forty-hour weeks. After Lengel denied Drake's request, Drake gave Lengel notice that he was resigning so he could look for a new job or possibly attend school to find a different type of work than auto mechanics. Drake also testified that he did not want to continue working for Lengel while looking for another job because his relationship with Lengel had become strained in recent years.

Following the telephone hearing, the Appeals Tribunal affirmed the deputy's determination and concluded that Drake was disqualified for benefits because he "voluntarily left work on August 3, 2012, without good cause attributable to his work or the employer." The Appeals Tribunal found that "[a]lthough here [Drake]'s work hours may have been fluctuating, his hours had been doing so for about a year, and presumably with his hours reduced, [Drake] had more time to look for other work before quitting." The Appeals Tribunal stated it was "not persuaded by [Drake]'s contention that he could not continue working [for Lengel] while looking for other work because his relationship with [Lengel] was strained, particularly as the relationship had been strained for about two years." The Appeals Tribunal determined that Drake's voluntary termination of his employment was neither reasonable nor in good faith, "especially when unemployment [was] the alternative."

Drake sought review from the Labor and Industrial Relations Commission ("Commission"), which affirmed and adopted the referee's decision. Drake appeals from the Commission's order disqualifying his unemployment claim.

## STANDARD OF REVIEW

■■■ Upon review of an unemployment claim, we examine the entire record to determine if it contains sufficient competent and substantial evidence to support the Commission's decision. *Dolgencorp, Inc. v. Zatorski,* 134 S.W.3d 813, 817 (Mo. App.2004). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003). We defer to the Commission's factual determinations but exercise independent judgment on questions of law. *Dolgencorp,* 134 S.W.3d at 817.

## ANALYSIS

■■■ Section 288.050 [1] disqualifies a claimant from receiving unemployment benefits if "the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." § 288.050.1(1). Drake does not dispute that he left his employment voluntarily. Drake's sole point on appeal is that the Commission erred in denying his benefit claim because there was no substantial or competent evidence to support a finding that he left work without good cause.

■■■ As a claimant, Drake had the burden of proving good cause. *O'Neal v. Maranatha Village, Inc.,* 314 S.W.3d 779, 785 (Mo.App.2010). " 'Good cause' for purposes of determining eligibility for unem-

---

1. All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2012, unless otherwise indicated.

ployment benefits has no fixed or precise meaning, and is judged by the facts of each case." *Quik 'N Tasty Foods, Inc. v. Div. of Emp't Sec.,* 17 S.W.3d 620, 626 (Mo.App.2000). "It is an objective measure based on what an average person would do acting reasonably and in good faith." *Mauller v. Div. of Emp't Sec.,* 331 S.W.3d 714, 718 (Mo.App.2011). Thus, "good cause" has two elements: reasonableness and good faith. *Miller v. Bank of the West,* 264 S.W.3d 673, 678 (Mo.App. 2008).

■ "With respect to the 'reasonableness' element, a claimant must demonstrate that the circumstances of the claimant's employment would cause a reasonable person to terminate the employment rather than continue working." *Knobbe v. Artco Casket Co., Inc.,* 315 S.W.3d 735, 740 (Mo.App.2010). "The circumstances constituting good cause 'must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical....'" *Id.* (alteration in original) (quoting *Hessler v. Labor & Indus. Relations Comm'n,* 851 S.W.2d 516, 518 (Mo. banc 1993)).

Drake argues he had good cause to quit because the reduction in his hours and loss of uniform benefits—which, in turn, reduced his income—constituted a substantial change in his income. We note, however, that the actual loss of income is not clearly established in the record, and the Commission's decision to deny the unemployment claim was based on Drake's failure to demonstrate good faith in quitting his job notwithstanding the reduction in hours and benefits.

■ The "good faith" element requires the employee to "prove an effort was made to resolve the dispute before resorting to the drastic remedy of quitting his or her job." *Tin Man Enterprises, Inc. v. Labor and Indus. Relations Comm'n of Mis-*

*souri,* 866 S.W.2d 147, 149 (Mo.App.1993). Here, although Drake asked Lengel if he could return to working forty-hour weeks prior to terminating his employment, Drake testified that a fluctuation in work hours was something that had happened throughout his employment with Lengel, thus demonstrating that Drake "was aware of and had previously accepted that aspect of the job." *Brannock v. Labor & Indus. Relations Comm'n of Missouri,* 745 S.W.2d 722, 724 (Mo.App.1987). In addition, Drake waited over a year after the most recent reduction in hours to terminate his employment. "Given this knowledge, it cannot be argued that the reduced hours constituted a good faith reason for termination...." *Id.;* see also *St. Louis Housing Auth. v. Labor & Indus. Relations Comm'n,* 639 S.W.2d 415, 417 (Mo. App.1982) (noting, in finding that a reduction in pay was not a "reasonable motivating factor" in the claimant's decision to quit, that the claimant "had worked for almost a year after her pay was reduced").

■ Drake testified that he did not look for other employment while still employed because his working relationship with Lengel had become strained in recent years after Drake requested and received a pay raise. Drake also testified that Lengel had become increasingly irritated by Drake's questions concerning work assignments. However, a lack of a "harmonious relationship" or "cordiality" between an employer and employee does not constitute good cause to quit. *Citizens Bank of Shelbyville v. Indus. Comm'n,* 428 S.W.2d 895, 900–01 (Mo.App.1968). "'[T]he Employment Security Law was designed to avoid the menace of economic insecurity, not to make work pleasant for employees.... [P]etty irritations are part of everyday living and no work is conducted in an atmosphere of complete sweetness and light.'" *Smith v. U.S. Postal Service,* 69

S.W.3d 926, 929 (Mo.App.2002) (alterations in original) (quoting *Citizens Bank,* 428 S.W.2d at 900). Accordingly, we cannot conclude that, under the circumstances of Drake's employment, a reasonable worker "seized with a genuine desire to work and be self supporting, would prefer no work at all." *Div. of Emp't Sec. v. Labor & Indus. Relations Comm'n,* 625 S.W.2d 882, 884 (Mo.App.1981).

Our Court has recognized that "good cause does not ordinarily exist when a person gives up partial employment for none at all." *Miller v. Help At Home, Inc.,* 186 S.W.3d 801, 809 (Mo.App.2006) (quoting *Div. of Emp't Sec.,* 625 S.W.2d at 885). Rather than terminating his employment altogether, Drake could have supplemented his reduced earnings with partial unemployment benefits, while at the same time utilizing the time he gained from the reduction in his hours to seek other employment.

Under Section 288.060.3, a qualifying claimant who is "partially unemployed" receives the "amount equal to the difference between his or her weekly benefit amount and that part of his or her wages for such week in excess of twenty dollars or twenty percent of his or her weekly benefit amount, whichever is greater...."[2] Consequently, a partially unemployed worker's total income of wages plus partial unemployment benefits will always be at least twenty dollars more than the benefits received for total unemployment. *Div. of Emp't Sec.,* 625 S.W.2d at 884–85. For example, a claimant whose weekly benefit amount is $150, who is employed part-time and earning $100 a week would be entitled to unemployment benefits in the amount of $80, thus providing the claimant with a $30 dollar incentive for continuing work. This incentive clearly suggests a legislative preference for employees to continue partial employment. *Id.* at 884.

For all the foregoing reasons, there was substantial and competent evidence to support the Commission's finding that Drake left work without good cause attributable to his work or employer. Accordingly, we find no error in the Commission's determination that Drake is not eligible for unemployment benefits.

Conclusion

We affirm the Commission's order.

ALL CONCUR.

---

**2.** One is "partially unemployed" when he earns, in a week of less than full-time work, less than his weekly benefit amount plus twenty dollars or twenty percent of his or her weekly benefit amount, whichever is greater. § 288.030(28)(b)b.