

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

GEORGE CHAVIS, )
)
    Appellant, )
) No. ED110016
v. )
)
WAL-MART ASSOCIATES, INC. ) Appeal from the Labor and
) Industrial Relations Commission
and ) Case No. 2149413
)
DIVISION OF EMPLOYMENT )
SECURITY, ) Filed: June 7, 2022
)
    Respondents. )

### Introduction

George Chavis (Claimant) appeals the decision of the Labor and Industrial Relations Commission (Commission) denying him unemployment compensation. The Commission concluded that Claimant voluntarily left his employment and was therefore not entitled to unemployment benefits. Because this conclusion is unsupported by sufficient competent evidence in the record, we reverse.

### Background

Claimant worked in the lawn and garden department at a Wal-Mart location in Jackson, Missouri (Employer). Claimant's employment began on April 16, 2020 and

ended on August 25, 2020. Claimant applied to the Division of Employment Security (Division) for unemployment benefits. A deputy denied Claimant's application, finding that he left work voluntarily without good cause attributable to Employer.

Claimant appealed the deputy's decision, and the Appeals Tribunal conducted a telephone hearing on June 2, 2021. Employer did not participate in the hearing, and only Claimant testified. Claimant testified as follows. While working a shift in the lawn and garden department on August 25, 2020, Claimant fell ill. Claimant reported his illness to his direct supervisor, who told Claimant he could go home if he wanted to. After testing positive for COVID-19 the next day, Claimant called and informed his direct supervisor of his illness. Claimant's direct supervisor advised him to call Wal-Mart headquarters and request paid leave. Claimant testified that there was a verbal policy put in place during the pandemic allowing employees who became sick with COVID-19 to contact headquarters to obtain paid leave.

Claimant testified he contacted Employer's headquarters, and after telling headquarters "the whole situation," the person he spoke with "turned it around on me and said I voluntarily left." Claimant stated this person also told him that his "manager was not higher enough up to give [him] permission to go home." Claimant further explained, "she basically said I didn't tell no one." Claimant testified he attempted to call the human resources department to get back on the schedule. Claimant testified that when he called human resources, "she always put me off and never talked to me." He said he initially did not request unemployment benefits because he expected to return to work. Claimant testified that he checked the online application on his phone that showed the employee

schedules, and when he saw he had not been scheduled to work, he called to let them know that as well.

Employer did not participate in the hearing. The only evidence in the record from Employer is the questionnaire submitted by Employer to the Division, which stated that Claimant voluntarily left employment: "The claimant is considered to abandon his or her job after failing to return to work." The questionnaire continued as follows:

> Was continuing to work available? Yes
>
> Did the claimant take actions to avoid quitting? No

It appears Claimant did not submit responses to the Division's questionnaire. The deputy who denied Claimant's initial application had given the following rationale for the decision, which was part of the record before the Appeals Tribunal:

> Per the employer, the claimant abandoned his job which is therefore a voluntary quit. Disqualified. The claimant quit because of unknown reasons. The claimant did not provide information to the division when given the opportunity.

The Appeals Tribunal found that on his last day of work, Claimant notified his direct supervisor that he was ill and received approval to go home, "but [Claimant] did not inform the proper, senior manager of this leave." The Appeals Tribunal further found that Claimant "never contacted human resources to inform the employer of said leave and eventual COVID-19 diagnosed sickness." The Appeals Tribunal concluded that Claimant "voluntarily separated from work after leaving work due to being ill," and Claimant "exhibited voluntariness by failing to have any contact with the employer after leaving." Thus, the Appeals Tribunal concluded Claimant voluntarily left work without good cause attributable to the work or Employer. Claimant appealed, and the Commission affirmed and adopted the decision of the Appeals Tribunal. This appeal follows.

3

Standard of Review

Appellate review of an award made by the Commission is governed by Section 288.210.[1] Turner v. Mitch Murch's Maint. Mgmt. Co., 436 S.W.3d 222, 225 (Mo. App. E.D. 2013). While we defer to the Commission on all factual issues that are supported by competent and substantial evidence, we owe no deference to the Commission's conclusions of law or application of the law to the facts. Id. at 226. We may modify, reverse, remand for hearing, or set aside the decision only under the following circumstances:

> (1) the Commission acted without or in excess of its powers,
> (2) the decision was procured by fraud,
> (3) the facts found by the Commission do not support the award, or
> (4) there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210. The determination of whether a claimant voluntarily left employment is ordinarily a factual determination, which we review to determine "whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." Valdez v. MVM Sec., Inc., 349 S.W.3d 450, 454 (Mo. App. W.D. 2011). We view the evidence objectively, not in the light most favorable to the Commission's decision. Turner v. Proffer Transp., Inc., 310 S.W.3d 769, 775 (Mo. App. E.D. 2010). "A decision that is contrary to the overwhelming weight of the evidence in the record is not supported by competent and substantial evidence." Id. (citation omitted).

Discussion

Claimant raises two related points on appeal. First, he argues the Commission's decision that Claimant left work voluntarily is unsupported by competent and substantial evidence in that Claimant left work due to a non-work-related illness, which was, as a

---

[1] All statutory references are to RSMo. 2000, unless otherwise indicated.

4

matter of law, not a voluntary quit. Claimant further argues in Point II that the Commission's decision that Claimant left work voluntarily is unsupported by competent and substantial evidence in that the record reflects Claimant made numerous calls to Employer attempting to return to work but was denied employment. As Claimant argues in both points that the Commission's finding Claimant left work voluntarily is unsupported by competent and substantial evidence, we address them together.

The Missouri Employment Security Law in Chapter 288 governs the distribution of unemployment compensation benefits. Ausley v. CCL Label (St. Louis), Inc., 513 S.W.3d 390, 394 (Mo. App. E.D. 2017). Specifically, as relevant here, Section 288.050.1(1) provides that benefits will be withheld if a claimant has "left work voluntarily without good cause attributable to such work or to the claimant's employer." Difatta-Wheaton v. Dolphin Cap. Corp., 271 S.W.3d 594, 598 (Mo. 2008) (citing section 288.050.1(1)). The claimant "bears the burden of establishing he was discharged and did not voluntarily quit." Turner, 436 S.W.3d at 226.

The Missouri Supreme Court has concluded that "voluntary" should be given its plain and ordinary meaning: "proceeding from the will: produced in or by an act of choice." Difatta-Wheaton, 271 S.W.3d at 598. Additionally, "[a] claimant's absence from work due to a non-work-related illness is not, as a matter of law, leaving work voluntarily." Turner, 436 S.W.3d at 226 (citing Difatta-Wheaton, 271 S.W.3d at 598). Rather, construing the language of Section 288.050.1(1) strictly and narrowly, "voluntary quit" should apply only where the claimant "not only does not show up, but also impliedly rejects the employment and the employer by some action such as failing to provide notification of the absence." Johnson v. Div. of Emp't Sec., 318 S.W.3d 797, 801 (Mo. App. W.D. 2010); see also

5

Robinson v. Courtyard Mgmt. Corp., 329 S.W.3d 736, 739 (Mo. App. E.D. 2011) (voluntary quit provision must be strictly and narrowly construed). Under the circumstances here, we find the record does not support the Commission's finding that Claimant left work voluntarily.

First, the Commission found that Claimant notified and received approval from his direct supervisor to leave work due to illness, but he failed to inform "the proper, senior manager of [his] leave." The only evidence that Claimant was required to inform a senior manager of his leave was Claimant's testimony regarding his call to headquarters to request paid leave due to having been diagnosed with COVID-19, which he testified he did at the direction of his direct supervisor. Employer submitted no evidence of any policy whereby an employee must inform a senior manager of an illness in order to receive approval to go home or to obtain paid leave. In fact, Employer did not participate in the hearing at all, either by providing evidence or cross-examining Claimant. Regardless, even if Claimant in fact failed to fulfill Employer's policy regarding paid COVID-19 leave, the result is that Claimant is not entitled to Employer's COVID-19 sick leave pay. It does not follow, even if we assume that Claimant in fact violated Employer's COVID-19 sick leave policy by only reporting his sickness to his direct supervisor and not a senior manager, that Claimant ultimately voluntarily left his job.

Second, the Commission found that Claimant voluntarily left his employment "by failing to have any contact with the employer after leaving." "While the Commission determines the weight and credibility of the evidence, the Commission may not ignore relevant evidence that is completely undisputed and not shown to be disbelieved or not credible." Proffer Transp., 310 S.W.3d at 775. Here, Claimant testified that after being

6

diagnosed with COVID-19, he contacted his direct supervisor, Employer's headquarters, and human resources a number of times, though they "always put [him] off and never talked to [him]." Claimant further testified that when Employer did not put him back on the schedule, he contacted Employer again. Again, we note that Employer did not participate in the hearing or dispute any of this testimony, nor did the Commission find Claimant not credible.

In fact, the Commission based one of its findings—that Claimant failed to notify the proper, senior manager of his illness—upon what Claimant testified he was told when he contacted Employer's headquarters. Thus, the Commission must have found credible at least Claimant's testimony that he contacted Employer's headquarters, which directly contradicts the Commission's finding that Claimant failed to contact Employer at all after leaving work.

Moreover, the only evidence in the record from Employer was Employer's questionnaire submitted to the Division in response to Claimant's initial request for benefits, which answered "no" to the question of whether Claimant took steps to avoid quitting. It is unclear what steps Employer expected Claimant to take, and this questionnaire does not directly dispute Claimant's testimony that he contacted Employer. Viewing the whole record objectively, and in absence of credibility findings, the Commission's conclusion that Claimant failed to have any contact with Employer after leaving work is inconsistent with the Commission's own factual findings and is against the overwhelming weight of the evidence.

Rather, the record reveals Claimant made multiple attempts to contact Employer during his illness and upon his recovery, and Claimant shared a desire to return to work.

7

"It is difficult to apply the phrase 'left work voluntarily' where 'the employee has conscientiously provided notice of the absence, purports to want to be at work, and claims constraint from attendance by circumstances such as sickness or some other difficulty.'" Turner, 436 S.W.3d at 226 (quoting Johnson, 318 S.W.3d at 801); see also Difatta-Wheaton, 271 S.W.3d at 595 (finding claimant who experienced cancer-related emergency and notified employer through facsimile and through friend contacting employer was entitled to benefits). In light of the whole record, we conclude the Commission neither made reasonable findings nor reached a reasonable result as there was insufficient competent evidence in the record to support the Commission's conclusion. Valdez, 349 S.W.3d at 454. Points granted.

Conclusion

We reverse the decision of the Commission because the record does not support the Commission's finding that Claimant left work voluntarily; rather, the overwhelming weight of the evidence in the record is that Claimant is unemployed through no fault of his own. We remand to the Commission to grant Claimant appropriate unemployment compensation.

_____
Gary M. Gaertner, Jr., J.

Robert M. Clayton III, P.J., and
Thomas C. Clark II, J., concur.

8