

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| JONATHAN CLAYTON, | ) | No. ED110122 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| vs. | ) | |
| | ) | |
| JARS TD, INC., and DIVISION OF | ) | |
| EMPLOYMENT SECURITY, | ) | |
| | ) | |
| Respondents. | ) | Filed:  October 4, 2022 |

## OPINION

In this unemployment compensation case, Jonathan Clayton appeals the decision of the Labor and Industrial Relations Commission disqualifying him from unemployment benefits because he voluntarily quit his job at Jars TD, Inc., without good cause.  Clayton argues on appeal: (1) that the Commission erred by considering Jars TD's objection to Clayton's claim for benefits because Jars TD was not his employer during the period of time, called the "base period," which the Missouri Employment Security Law uses to calculate benefits; (2) that there was not competent and substantial evidence supporting the Commission's finding that Clayton "left work voluntarily without good cause attributable to such work or to [his] employer," as that disqualifying phrase is

used in section 288.050.1(1)[1]; and (3) that certain facts set forth in the Commission's decision are contrary to the evidence in the record.

We affirm. With respect to Point I, Jars TD, as Clayton's last employer, properly protested Clayton's claim, irrespective of whether Jars TD employed him during the statutory "base period." As to Point II, there was competent and substantial evidence before the Commission that by giving his employer just ten to fifteen minutes to resolve the safety issue he had raised before walking off the job, Clayton failed to act in good faith, which is disqualifying. Finally, we dismiss Point III as multifarious and thus in violation of Rule 84.04(d).[2]

**Background**

On November 5, 2019, Clayton was hired by Jars TD, a delivery service contractor, to deliver packages for Amazon, an online retailer. On the mornings he was scheduled to work, Clayton arrived at Jars TD's lot at 6:15 a.m. and was assigned a delivery vehicle. Before departing for the Amazon warehouse, Clayton was expected to inspect his assigned vehicle and report any problems to Jars TD. Vehicle maintenance or safety issues could be reported electronically or by directly notifying the Jars TD dispatcher located inside the Amazon facility.

On December 15, 2019, the weather forecast called for snow. That morning, Clayton inspected his assigned vehicle and found that it had two tires with poor tread. He requested a different vehicle from the Jars TD employee in charge of vehicle assignment that morning. After this request was refused, he telephoned Jars TD's manager, Steven Powell, and reiterated his concerns and his request for a different vehicle. Powell instructed Clayton to stand by while he looked into the matter. Clayton waited ten to fifteen minutes and then left before receiving a

---

[1] All statutory references are to the Revised Statutes of Missouri (2016).
[2] All rule references are to the Missouri Supreme Court Rules (2022).

2

response.  He texted his resignation to Powell and then departed the workplace at approximately 7:10 a.m.  It began to snow around 10:00 a.m.

On March 22, 2020, Clayton filed his claim for unemployment compensation with the Missouri Division of Employment Security.  Jars TD objected to Clayton's claim on the basis that he was disqualified because he voluntarily quit his employment.  On June 6, 2020, a deputy of the Division determined that Clayton was disqualified for benefits because he voluntarily quit without good cause attributable to the work or to the employer.  The deputy reasoned that Clayton "did not want to drive due to a snow forecast and the station was not closed."

Clayton appealed the deputy's determination to the Division's Appeals Tribunal.  An appeals referee conducted a telephone hearing attended by Clayton.  Jars TD did not participate.  On February 8, 2021, the Appeals Tribunal issued its decision affirming the deputy's determination.  Clayton filed his application for review to the Commission.  On October 22, 2021, the Commission affirmed and adopted the Appeals Tribunal's decision.  Clayton appeals.

## Standard of Review

Our review of the Commission's decision is governed by the Missouri Constitution and section 288.210.  We review whether the Commission's decision is "authorized by law" and "supported by competent and substantial evidence upon the whole record."  Mo. Const. art. V, § 18.  Under section 288.210, we may modify, reverse, remand for rehearing, or set aside the Commission's decision if it is found (1) that the Commission acted without or in excess of its powers; (2) that the decision was procured by fraud; (3) that the facts found by the Commission do not support the decision; or (4) that there was not sufficient competent evidence in the record to support the decision.  When, as here, the Commission adopts the decision of the Appeals

3

Tribunal, we consider that decision to be the Commission's for purposes of review. *Ekres v. Div. of Emp't Sec.*, 641 S.W.3d 411, 417 (Mo. App. W.D. 2022).

In the absence of fraud, we accept the Commission's factual findings so long as they are supported by competent and substantial evidence in the record. *Mickles v. Maxi Beauty Supply, Inc.*, 566 S.W.3d 274, 277 (Mo. App. E.D. 2019). We give deference to the Commission's "resolution of conflicting evidence regarding a factual issue, the weighing of the evidence, and the credibility of witnesses." *Smith v. Greyhound Bus Company*, 477 S.W.3d 55, 59 (Mo. App. E.D. 2016) (citation omitted). Therefore, "[i]f the Commission has reached one of two possible conclusions as to a finding of fact, the reviewing court will not reach a contrary conclusion even if the court could reasonably do so." *Hoeft v. True Manufacturing Company, Inc.*, 604 S.W.3d 337, 339 (Mo. App. E.D. 2020).

Questions of law are reviewed *de novo*. *Difatta-Wheaton v. Dolphin Cap. Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008).

**Discussion**

**Point I**

In his first point, Clayton argues that since Jars TD was not his employer during the statutory "base period" used to calculate unemployment benefits, the Commission erred by allowing Jars TD to protest his claim. We disagree because there is no statutory requirement that an employer be included in the base period of a claim in order to be entitled to protest the claimant's allowance of benefits. Section 288.070. To the contrary, section 288.070.1 provides that notice of the initial unemployment benefits claim shall be given (1) to any base period employer *and* (2) to the claimant's last employer, and that each of those employers has ten days to protest in writing the allowance of benefits.

4

Here, Clayton reported to the Division that Jars TD was his last employer. In accordance with section 288.070.1, the Division in turn notified Jars TD of Clayton's claim. Jars TD then filed its protest against Clayton's claim within ten days as required.

Point I is denied.

## Point II

To resolve Clayton's second point on appeal, we must determine whether there was competent and substantial evidence in the record to support the Commission's statutory finding that Clayton's voluntary departure from work on December 15, 2019 was "without good cause attributable to the work or to [his] employer." Section 288.050.1; *Shields v. Proctor & Gamble Paper Products Co.*, 164 S.W.3d 540, 543 (Mo. App. E.D. 2005). It is uncontested that Clayton voluntarily quit his job at Jars TD on December 15, 2019.[3] The Commission found that Clayton quit because "he did not want to drive in inclement weather in a van that had two tires with poor tread."[4] The issue before us, however, is whether he had good cause to quit, which depends in part on whether he acted in good faith.[5] We agree with the Commission's conclusion that he did not.

The determination of good cause in this context is a question of law that we review *de novo*. *Darr v. Roberts Mktg. Grp., LLC*, 428 S.W.3d 717, 724 (Mo. App. E.D. 2014). The legislature has defined good cause as that "which would compel a reasonable employee to cease

---

[3] In his brief, but not in his point relied on, Clayton asserts that Jars TD constructively discharged him. Laying aside the Rule 84.04(d) defect, the Missouri Employment Security Law does not recognize constructive discharges, but instead asks whether the claimant had good cause attributable to work or to the employer to quit voluntarily. *See Firmand v. Univ. of Mo.*, 628 S.W.3d 434, 437 (Mo. App. S.D. 2021).

[4] Clayton testified that he resigned because Jars TD failed to address unsafe working conditions, which put its drivers in dangerous, unroadworthy vehicles with cracked windshields, broken wiper blades, and tires with little to no tread. However, those allegations are not before us because according to the record Clayton's complaints that day centered on one vehicle. *Mo. Div. of Emp't Sec. v. Labor & Indus. Relations Comm'n of Mo.*, 651 S.W.2d 145, 150 (Mo. banc 1983) ("[T]he causation envisioned in the unemployment statutes is that having as its direct and immediate consequence the claimant's unemployment.").

[5] Because our discussion of good cause is dispositive, we need not reach the issue of whether the cause was attributable to the work or to Jars TD.

working or which would require separation from work due to illness or disability." Section 288.050.1. Consistent with this definition, good cause has long been understood to mean circumstances that "would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment." *Hessler v. Labor and Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. banc. 1993). It is an objective measure based on two elements: reasonableness and good faith. *Drake v. Lengel*, 403 S.W.3d 688, 691 (Mo. App. W.D. 2013). The employee's voluntary termination is reasonable if he proves "[his] concerns are real or that a reasonable worker would have them." *Firmand v. Univ. of Mo.*, 628 S.W.3d 434, 437 (Mo. App. S.D. 2021). Good faith requires the employee to "prove an effort was made to resolve the dispute before resorting to the drastic remedy of quitting his or her job." *Drake*, 403 S.W.3d at 691 (internal quotation omitted).

We find that there was competent and substantial evidence supporting the Commission's conclusion that Clayton failed to act in good faith because he waited only ten to fifteen minutes for his manager Powell's response before abandoning the workplace. The record establishes that Clayton called Powell to complain that the van he was assigned that day had bald tires and was unsafe to drive in the forecasted winter weather. During the call, Powell told Clayton to "hold on" while "he saw what he could do," and that he would "get back with" him. Clayton did not tell Powell that he intended to leave if he was not assigned another vehicle. Clayton conceded that he waited only ten to fifteen minutes after hanging up with Powell before resigning his position by text message and leaving. The Commission also found that he "did not make another attempt to contact the site manager prior to leaving." This competent and substantial evidence supports the Commission's decision.

We now turn to Clayton's argument that the record supports his version of events and demonstrates that the Commission erred. Clayton's assertions in this regard ignore our standard of review. *See Smith*, 477 S.W.3d at 59. First, Clayton argues that he repeatedly tried to resolve his safety issue through multiple telephone calls, but that Powell failed to respond. The Commission declined to accept Clayton's version of events and as the ultimate fact-finder, the Commission "could believe all, none, or any part of the testimony of the interested parties." *Allen v. Green Ridge R-VIII School Dist.*, 892 S.W.2d 635, 637 (Mo. App. W.D. 1994). And when the Commission finds a witness's testimony lacks credibility, as it did here, "it is free to ignore such evidence." *Scrivener Oil Co., Inc. v. Div. of Emp't Sec.*, 184 S.W.3d 635, 639 (Mo. App. S.D. 2006).

Next, Clayton argues that he spent fifty-five minutes "trying to get a safer delivery van" before he left. While it may have been fifty-five minutes from the time he arrived at work until he left, the relevant time period for the Commission and for this Court is the ten to fifteen minutes he gave his manager to resolve his safety concerns before he quit and left.

We are likewise unpersuaded by his reliance on *Heavy Duty Trux Ltd. v. Labor & Indus. Relations Comm'n*, which we find to be readily distinguishable on its facts. In *Heavy Duty Trux*, the court found the claimant demonstrated good faith because he engaged with his employer for over thirty minutes regarding their work-related dispute and learned the employer's response to his complaint before he quit and left. 880 S.W.2d 637, 644 (Mo. App. W.D. 1994). That did not happen here. Clayton told Powell about his safety concerns but then left the job site before Powell responded, even though Powell asked Clayton to "hold on" while he looked into it.

While Clayton's safety concerns may have been real and likely shared by anyone who has ventured out onto Missouri's wintry roads, Clayton's decision to quit and leave work was not made

7

in good faith. By giving Jars TD only ten to fifteen minutes to address his concerns, Clayton failed to demonstrate that he tried in good faith to resolve the safety issue before he resorted to the drastic step of quitting and leaving. *Drake*, 403 S.W.3d at 691.

Point II is denied.

## Point III

In his third and final point, Clayton argues that the following factual findings are contrary to the evidence in the record: (1) that he was "upset" about his van assignment; (2) that his delivery van had "two tires with poor tread"; and (3) that he "did not make another attempt to contact the site manager prior to leaving regarding a new van assignment."

This point is multifarious in violation of Rule 84.04(d) because Clayton has lumped together multiple claims of erroneous factual findings by the Commission that would require separate analyses by this Court to determine what, if any, error may be attributable to each.

Point III is dismissed.

## Conclusion

For the reasons stated above, we affirm the Commission's decision.

James M. Dowd, Judge

Kelly C. Broniec, P.J., and
Philip M. Hess, J. concur.

8