

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| ELISA GARLAND, | ) | No. ED111832 |
| | ) | |
| Appellant, | ) | Appeal from the Labor & Industrial |
| | ) | Relations Commission |
| v. | ) | Appeal Nos. 2246830 & 2246829 |
| | ) | |
| DIVISION OF EMPLOYMENT | ) | |
| SECURITY, | ) | |
| | ) | |
| Respondent. | ) | Filed: February 20, 2024 |

## Introduction

Appellant Elisa Garland ("Garland") appeals the decision of the Labor and Industrial Relations Commission ("Commission") disqualifying her from receiving unemployment benefits under Section 288.050 because she voluntarily terminated her employment without good cause.[1] We affirm the decision of the Commission.

## Factual and Procedural Background

Garland began working for Saint Louis Synergy ("Synergy") as an instructor for children with disabilities in October 2020, and separated from her employment with Synergy on

---

[1] All statutory references are to the Missouri Revised Statutes (2020).

December 4, 2020. Thereafter, Garland applied for and received unemployment benefits from December 2020, until June 2021.

On July 18, 2022, Garland was mailed a deputy's determination from the Division of Employment Security informing her that she had been overpaid by approximately $7,200 in unemployment benefits because she was paid during a period of disqualification. Garland filed an untimely appeal on November 18, 2022.

A hearing on Garland's disqualification and overpayment was held by telephone on April 7, 2023. During the hearing, Garland testified that she began working for Synergy in October 2020 on a part-time basis at a rate of $10 per hour to supplement her income. Garland testified that during the course of her employment with Synergy, her hours, originally approximately six per week, slowly diminished, which Garland attributed to the Covid-19 pandemic and outbreaks of the virus within Synergy. Garland testified that she was eventually discharged from her position due to a lack of available hours, and that, after December 4, 2020, she was no longer put on the schedule. Garland testified that she did not know whether Synergy closed or continued to operate after that date. Garland stated that she did not attempt to contact Synergy after that date and Synergy did not attempt to contact her. Garland testified that she was never told by anyone at Synergy that she was being terminated or that there were no hours available; she instead maintained that she was simply taken off the schedule. Garland's claim that there were no hours available was ultimately found to not be credible due to Garland's lack of further explanation and evasiveness when pressed on the matter.

Garland further testified that she was removed from the schedule due to her complaints that Synergy was not following proper Covid-19 protocols, but she provided no explanation of what such protocols were or how Synergy was violating them. Garland testified that she was

experiencing a high-risk pregnancy at the time, which made the lack of protections particularly concerning, although Garland did not provide further details on her pregnancy or evidence of why she was at increased risk. In support of her claim that Synergy had breached Covid-19 protocols, Garland testified that on her last day of employment, an incident occurred in which a student inserted his finger into his buttocks and smeared feces on the premises. Garland explained that she spoke to her supervisor about the incident prior to the end of her shift that day but did not attempt to further address her safety concerns with Synergy. Garland did not testify as to which Covid-19 protocols could have prevented such an event or were breached during the incident.

Additionally, Garland testified that she was terminated from her concurrent full-time employment at the end of November 2020, thus losing her main source of income and benefits. Garland explained that, due to her pregnancy, it was imperative for her to find new employment with benefits as soon as possible. Garland testified that, after her last day with Synergy, she chose to focus on finding a new full-time position that would be able to support her. Garland did not explain why she was unable to simultaneously look for work while also pursuing the work available to her with Synergy.

On April 13, 2023, the Appeals Tribunal issued its determination that, while Garland showed good cause to file her appeal out of time due to her never receiving the initial ineligibility determination, she was nevertheless disqualified from receiving benefits because she voluntarily quit her position with Synergy on December 4, 2020, without good cause. The Labor and Industrial Relations Commission affirmed the decision on June 14, 2023. Garland appeals.

**Standard of Review**

This Court reviews the Commission's decision in employment security matters to determine whether it is "authorized by law" and "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, section 18; see also *Biswas v. Div. of Emp. Sec.*, 496 S.W.3d 587, 590 (Mo. App. E.D. 2016) (citing *Fendler v. Hudson Servs.*, 370 S.W.3d 585, 588 (Mo. banc 2012)). Pursuant to this limited authority, we:

> [M]ay modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
> (1) That the commission acted without or in excess of its powers;
> (2) That the decision was procured by fraud;
> (3) That the facts found by the commission do not support the award; or
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210.5. The determination of whether a claimant voluntarily left employment is ordinarily a factual determination, which we review to determine "whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." *Valdez v. MVM Sec., Inc.*, 349 S.W.3d 450, 454 (Mo. App. W.D. 2011). We view the evidence objectively, not in the light most favorable to the Commission's decision. *Turner v. Proffer Transp., Inc.*, 310 S.W.3d 769, 775 (Mo. App. E.D. 2010). "A decision that is contrary to the overwhelming weight of the evidence in the record is not supported by competent and substantial evidence." *Id*. (citation omitted).

**Discussion**

Garland raises two points on appeal. In her first point, Garland argues that the Commission erred in determining that she voluntarily left work with Synergy because the facts demonstrate that she was removed from the schedule due to a lack of available work, and because she reported the business's failure to follow Covid-19 protocols. In her second point, set forth in the alternative to her first point, Garland claims the Commission further erred in denying

her claim because there was evidence to show that she had good cause to leave her position, in that Synergy failed to follow Covid-19 protocols, thereby making the work environment unsafe for Garland, who was pregnant at the time.

The primary purpose of the Missouri Employment Security Law is to provide benefits to persons "unemployed through no fault of their own." Section 288.020.1. Section 288.050 disqualifies a claimant from receiving certain unemployment benefits if the claimant left work voluntarily and without good cause attributable to such work or her employer. *Hill v. S.M. Huber Enters., Inc.*, 662 S.W.3d 163, 165 (Mo. App. E.D. 2023). "An employee is deemed to have left work voluntarily when she leaves of her own accord, as opposed to being discharged, dismissed, or subjected to layoff." *Darr v. Roberts Mktg. Grp., LLC*, 428 S.W.3d 717, 724 (Mo. App. E.D. 2014). The determinative question is whether the employer or employee committed the final act which severed the relationship. *Id.* Accordingly, "voluntary quit" within the meaning of section 288.050 should apply only where the claimant not only does not show up, but also impliedly rejects the employment and the employer by some action such as failing to provide notification of the absence. *Chavis v. Wal-Mart Assocs., Inc.*, 646 S.W.3d 703, 706 (Mo. App. E.D. 2022) (quoting *Johnson v. Div. of Emp. Sec.*, 318 S.W.3d 797, 801 (Mo. App. W.D. 2010)) (internal quotations omitted).

Whether an employee left work voluntarily is generally a factual determination, which we review to determine "whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." *Hill*, 662 S.W.3d at 165–66 (quoting *Chavis*, 646 S.W.3d at 705–06) (internal quotation omitted). Here, while Garland testified that, at the time of her separation from Synergy on December 4, 2020, there were no hours available for her to work, such testimony was found not to be credible due to the absence of any further

5

details explaining the alleged lack of hours. "As the ultimate fact-finder, the Commission could believe all, none, or any part of the testimony of the interested parties." *Clayton v. Jars TD, Inc.*, 654 S.W.3d 726, 731 (Mo. App. E.D. 2022), *reh'g and/or transfer denied* (Nov. 8, 2022) (quoting *Allen v. Green Ridge R-VIII Sch. Dist.*, 892 S.W.2d 635, 637 (Mo. App. W.D. 1994)) (internal quotations omitted). When the Commission finds a witness's testimony lacks credibility, it is free to ignore such evidence. *Id*. As such, the portion of Garland's testimony that the Commission found *credible*—that she never discussed a lack of hours with a supervisor, was never explicitly told that there were no available hours for her to work or that she was being terminated, and never followed up with Synergy about her employment status or the availability of hours after December 4, 2020—supports the finding that she voluntarily left work with Synergy.

Furthermore, while Garland also claimed that she was removed from the schedule following a complaint to her supervisor regarding unsafe working conditions concerning Covid-19, Garland presented no evidence to support such a claim. While Garland testified to an incident in which a student smeared feces on the wall, Garland did not provide any explanation of what specific protocols Synergy failed to follow or how those protocols could have prevented such an incident, or even how such an incident related to Covid-19 concerns. As such, the Commission's determination that Garland voluntarily left her employment with Synergy was supported by competent and substantial evidence.

When a claimant is deemed to have left voluntarily, the question then becomes whether the claimant had good cause attributable to her work or employer. *McCabe v. ADP Total Source FL XVIII, Inc.*, 653 S.W.3d 420, 424 (Mo. App. E.D. 2022). The burden is on the claimant to

show good cause for leaving her employment. *Id*. Whether a claimant's reason for resigning constitutes good cause is a question of law that is reviewed de novo. *Darr*, 428 S.W.3d at 724.

Missouri courts have long interpreted "good cause" as circumstances that would cause an average, able-bodied, qualified, and reasonable person in a similar situation to leave the employment rather than continue working. *Id.*; *Hessler v. Lab. & Indus. Rels. Comm'n*, 851 S.W.2d 516, 518 (Mo. banc 1993). Good cause is an objective measure based on two elements: reasonableness and good faith. *Clayton*, 654 S.W.3d at 730. An employee's voluntary termination is reasonable if she proves "her concerns are real or that a reasonable worker would have them." *Firmand v. Univ. of Mo.*, 628 S.W.3d 434, 437 (Mo. App. S.D. 2021). Good faith requires the employee to "prove an effort was made to resolve the dispute before resorting to the drastic remedy of quitting his or her job." *Drake v. Lengel*, 403 S.W.3d 688, 691 (Mo. App. W.D. 2013) (internal quotation omitted).

Good cause is limited to circumstances in which external pressures attributable to the work or the employer are so compelling that a reasonable person would be justified in terminating employment. *McCabe*, 653 S.W.3d at 424–25. This Court has consistently recognized that "good cause does not ordinarily exist when a person gives up partial employment for none at all." *Drake*, 403 S.W.3d at 692 (quoting *Miller v. Help At Home, Inc.*, 186 S.W.3d 801, 809 (Mo. App. W.D. 2006)). Here, Garland has failed to prove that she had good cause to leave partial employment, even with limited hours, in favor of unemployment. Indeed, while Garland repeatedly claimed that she needed to focus her attention on searching for a full-time position with insurance benefits after she was terminated from her full-time employment, Garland presented no explanation for why she could not simultaneously search for new work while retaining her six hours or less per week at Synergy. *Id.*

Furthermore, a claimant who alleges a medical reason as good cause for prompting her departure from employment must offer expert medical evidence proving a causal connection between her work and the medical reason to establish her employment caused or aggravated the existing medical condition, unless the medical condition/relationship is within the common knowledge or experience of a layperson. *Menley v. JJF & C, LLC*, 637 S.W.3d 687, 690 (Mo. App. E.D. 2021). Though Garland testified that she was "high risk" because she was pregnant, although it is unclear whether she was experiencing a high-risk pregnancy or was simply at a higher risk of contracting Covid-19 because she was pregnant, Garland gave no further testimony regarding details of her pregnancy and presented no medical evidence establishing a causal connection between the work she was doing for Synergy and how it aggravated her condition. While Garland continuously testified that Synergy "wasn't following protocol", at no point did she provide any details on what protocols she claimed were being violated or how the work she was performing put her at increased risk.[2] Garland's argument that the incident in which a student smeared feces on the wall supports her claim fails for the simple fact that Garland did not establish how the incident was the result of breached Covid-19 protocols, what protocols could have prevented the incident, or even how the event was not a foreseeable risk of working with special-needs children.

---

[2] In her brief, Garland argues that she repeatedly explained during the hearing that mask-wearing was not occurring and that she was made to have close contact with high-risk children who were not wearing masks, however, this Court can find no such testimony in the record. While Garland testified that her position with Synergy involved "doing different touch, like, different facial exercises" and that she "was in very close quarters with kids doing preventative methods for, um, disability," she never alleged that the children (or anyone else at Synergy) were not wearing masks. In fact, the only mention Garland made about masks was, "[m]aybe we're all forgetting what happened during COVID, it plays into all of it. We couldn't even leave and go to the grocery stores. I don't know if you remember but it was really, really bad. And therefore, when you don't wear a mask and kids are putting feces on each other [sic] faces, people are gonna get sick and clients are gonna drop and instructors are gonna drop." This statement is insufficient to establish a breach of protocols as it provides no details of who, if anyone, was failing to wear a mask in breach of protocol, or what the protocols were in place at that time.

Finally, the record reflects that Garland failed to act in good faith by not attempting to resolve her safety concerns with Synergy prior to quitting. While Garland argues that she had good cause to leave her employment with Synergy because of Synergy's failure to follow Covid-19 protocols—which, as established above, she failed to substantiate—Garland did not submit any evidence showing that she made sufficient good faith efforts to resolve her Covid-19 safety concerns prior to her separation. While Garland testified that she spoke to a supervisor at the end of her shift on her last day, December 4, 2020, about the incident in which the child smeared feces on the wall and told the supervisor that "protocol should be followed here because that's dangerous," such evidence does not correlate to her alleged specific concerns regarding breach of Covid-19 protocols or how such an incident put her in danger of contracting Covid-19. As such, Garland's admission that she did not attempt to follow up with Synergy after that date to address her alleged Covid-19 safety concerns is fatal to her claim.

Thus, the record shows that Garland voluntarily quit her job with Synergy without good cause. Points I and II are denied.

### Conclusion

For the reasons set forth above, the decision of the Commission is affirmed.

_____
Renée D. Hardin-Tammons, J.

Kurt S. Odenwald, P.J., and
Michael E. Gardner, J., concur.

9